B. Nathaniel Richter, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 2779.    Promulgated October 31, 1944.

*B. Nathaniel Richter, Esq.*, pro se.
*Paul E. Treusch, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: The issues in this proceeding may be summarized as follows:

(1) Whether in the taxable year petitioner was the head of a family and entitled to the $2,500 exemption which the statute provides for the

head of a family for the taxable year. The petitioner was a single man, but was living with his mother and father and two brothers in one household. Petitioner claims to have paid practically all the expenses of the household and to have exercised family control over his invalid mother and his two brothers, and for these reasons he claims he was the head of a family.

(2) Whether the entire gain of $8,327.50 from a real estate mortgage transaction should be taxed to petitioner, as the Commissioner contends, or whether only one-half thereof should be taxed to petitioner and the other one-half should be taxed to petitioner's brother, Israel Richter. It is petitioner's contention that he agreed with his brother to take him in with a one-half interest in petitioner's part of the profits from this transaction, and that they were partners or joint venturers to that extent. It is the Commissioner's contention that Israel Richter was not a participant in this transaction and that anything which petitioner paid his brother out of the profits which he received from this transaction was either a gift or a mere assignment of income and that in all events petitioner was taxable on the entire amount of profits which he received from the transaction.

We shall take up the issues in their order.

*Issue 1.*—Whether petitioner was the head of a family in 1939 and is entitled to a personal exemption of $2,500, is governed by section 25 (b) (1), Internal Revenue Code, and section 19.25–4, Regulations 103, printed in the margin.[1] It will be noted from a reading of section 25 (b) (1), that it does not define "head of a family." That has been left for the Treasury regulations. Four essentials are established by the regulations to entitle the taxpayer to the $2,500 exemption allowed by the 1939 statute to the head of a family: (1) Actual support; (2) maintenance of the home; (3) right to exercise family control; and (4) actual relationship by blood, marriage, or adoption, supported by legal or moral obligation. See sec. 32.09, vol. 5, Mertens Law of Federal Income Taxation, and cases there cited. See also Mim. 5327, prescribing rules governing the allowance of personal exemption as head of a

---

[1] SEC. 25. CREDITS OF INDIVIDUAL AGAINST NET INCOME.

\* \* \* \* \* \* \*

(b) CREDITS FOR BOTH NORMAL TAX AND SURTAX.—There shall be allowed for the purposes of the normal tax and the surtax the following credits against net income:

(1) PERSONAL EXEMPTION.—In the case of a single person or a married person not living with husband or wife, a personal exemption of $1,000; or in the case of the head of a family or a married person living with husband or wife, a personal exemption of $2,500. \* \* \*

SEC. 19.25–4 [Regulations 103]. *Personal exemption of head of family.* A head of a family is an individual who actually supports and maintains in one household one or more individuals who are closely connected with him by blood relationship, relationship by marriage, or by adoption, and whose right to exercise family control and provide for these dependent individuals is based upon some moral or legal obligation. \* \* \*

family and credit for dependents, Cumulative Bulletin 1942–1, p. 81. All four of the enumerated essentials must exist before a taxpayer is entitled to claim exemption of $2,500 as the head of a family under section 25 (b) (1) in 1939. If one or more of them is lacking the claim must fail.

It seems to us that petitioner has established by the evidence all four of the essentials which the regulations prescribe. (1) It is clear that petitioner provided most of the financial support for the family. The father operated a small hardware store, but the testimony is to the effect that the store had very little business and little, if any, net earnings. Occasionally the father used some of the gross receipts from the store to meet the family expenses, but whenever he did so petitioner had to pay from his own personal funds bills which the father had contracted for merchandise to sell in the store. On the whole, it was petitioner who provided the funds for the support of the family.

(2) It was petitioner who maintained the home for the family. The premises where the family lived were formerly owned by Oscar Richter and his wife, but during the depression they lost them, and in 1935 petitioner repurchased them and they have remained the family residence ever since, petitioner paying all taxes, cost of repairs, interest on the mortgage, and payments on the principal of the mortgage.

(3) It was petitioner who actually exercised the family control. It was he who determined what physicians should treat his mother in her illness and what hospital she should enter while undergoing treatment. It was he who paid all the bills for medical treatment and hospital care. He also paid all funeral expenses following his mother's death in the latter part of 1939. It was petitioner who decided what college his brother, Emanuel, who was a minor 17 years of age, should attend, and it was the petitioner who paid all expenses. The evidence shows that petitioner's father made no effort to exercise family control. He was quite content to leave such matters to petitioner, his eldest son, who was willing and able to provide the family support. Paragraph 7 of Mim. 5327, to which reference has already been made, deals with the subject of "Right to Exercise Family Control and Obligation to Support," and, among other things, it says:

7. The right to exercise family control is generally the right to determine the manner in which the affairs of the household shall be conducted and this right falls naturally to him who furnishes the means for its support and maintenance. * * *

Such was the effect of our holding in *Annette Loughran*, 40 B. T. A. 252. In that case the Commissioner seemed to have made much the same contention as he makes here, to wit, that at common law the husband and father is the head of the family and that this position

is not lost by reason of actual failure to provide support for the family. In ruling upon that contention, among other things, we said:

\* \* \* It is true that under local law a husband is a head of a family and has a primary legal duty to support his wife; nevertheless, where he has neglected his legal duty and failed to exercise his legal rights as a head of a family, then, in applying a provision of a revenue act, we believe that it is in accord with the intendment of Congress to hold that another person who acts as head of the family under exercise of a moral obligation was the head of the family for purposes of taxation. \* \* \*

(4) Actual relationship by blood, marriage, or adoption, supported by legal or moral obligation. There can be no question, we think concerning the fulfillment of this essential required by the regulations under the facts of the instant case.

Therefore, in pursuance of the Treasury regulations, *supra*, defining who is "head of the family," which have been approved many times by this and other courts, and following *Annette Loughran, supra*, we sustain petitioner as to issue 1.

It is, perhaps, proper that we mention that petitioner in his income tax return did not claim any credit for dependents. The Commissioner in his determination of the deficiency disallowed petitioner's claimed exemption of $2,500 as head of the family and substituted a personal exemption of $1,000 as a single man. In addition the Commissioner allowed petitioner a credit of $733 for dependents. The assignment of error in the petition attacks the correctness of the Commissioner's action in disallowing petitioner's claimed credit of $2,500 as the head of a family, but makes no mention of the Commissioner's determination that petitioner was entitled to a credit of $733 for dependents. Respondent in his answer does not affirmatively allege that he erred in allowing $733 credit for dependents. The credit for dependents which the Commissioner has allowed is apparently based upon a credit of $400 for Emanuel Richter, who was a minor maintained in the household for the entire year 1939, and the remaining $333 is apparently based upon a computation for the part of the year in which petitioner's mother was living, she having died after a long illness in the latter part of 1939. This credit for dependents granted to petitioner in the determination of the deficiency appears to be in accordance with the Treasury regulations. At any rate no issue is raised by the pleadings concerning this credit for dependents and, therefore, in a recomputation under Rule 50 it will remain undisturbed.

*Issue 2.*—It is clear that petitioner's profits from the purchase and sale of the Shipley farm mortgage option were from a joint venture, or partnership, which he had with Harry Sklarow, and petitioner's brother, Israel, was in no sense a member of that partnership or joint

venture. Harry Sklarow testified that Israel was not a party in the deal and that he did not know him in any of the stages of the transaction. We do not understand that petitioner contends to the contrary, because he has requested us to make the following findings of fact with respect to the Shipley farm mortgage transaction:

24. That HARRY SKLAROW and B. NATHANIEL RICHTER entered said deal as equal partners.

25. That B. NATHANIEL RICHTER had specifically entered into a partnership agreement with ISRAEL L. RICHTER as to the remaining one-half of the deal; B. NATHANIEL RICHTER to provide the money, ISRAEL L. RICHTER to develop, sell, distribute and promote a lot subdividing project.

Thus the substance of petitioner's contention is that, while it is true that he and Harry Sklarow were partners and joint venturers in the purchase and sale of the Shipley farm mortgage and each was entitled to receive one-half the profits therefrom, nevertheless, petitioner is taxable on only one-half of his share of the profits because, prior to the earning of his share of the profits, he had entered into a subpartnership agreement with his brother, Israel, under which Israel was to receive a one-half interest in petitioner's share of the profits. Even though petitioner did enter into a subpartnership agreement with Israel under which Israel was to receive one-half of petitioner's share of the profits from the deal, and subsequently payments were made to Israel of approximately one-half of petitioner's share of the profits, it does not relieve petitioner from taxation on his one-half share of the profits which were received by him from the joint venture or partnership between petitioner and Sklarow. See *Burnet* v. *Leininger*, 285 U. S. 136; *George M. Cohan*, 11 B. T. A. 743; affd., 39 Fed. (2d) 540.

Following the Supreme Court's decision in *Burnet* v. *Leininger*, *supra*, we hold that in the instant case whatever right Israel had to one-half of petitioner's share of the profits from his partnership or joint venture agreement with Sklarow in the Shipley farm mortgage deal was derived from his agreement with petitioner to be a subpartner in his interest and rested upon the distributive share which petitioner had and continued to have as a member of the partnership or joint venture of Sklarow and Richter, in which joint venture or partnership Israel was in nowise a member. The amount of petitioner's share of the net profits in that partnership or joint venture is not in dispute. Petitioner concedes that it is as computed by the Commissioner in his deficiency notice. These profits are all taxable to petitioner under *Burnet* v. *Leininger*, *supra*.

The Commissioner is sustained under issue 2.

*Decision will be entered under Rule 50.*