William P. Toms v. Commissioner.
Toms v. Commissioner
Docket No. 7417.
United States Tax Court
1946 Tax Ct. Memo LEXIS 243; 5 T.C.M. (CCH) 183; T.C.M. (RIA) 46062; March 13, 1946
Scott P. Crampton, Esq., for the petitioner. E. M. Woolf, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in petitioner's income tax for the calendar year 1941 in the amount of $400, resulting from the disallowance of a deduction claimed in the amount of $800 for legal expenses, and of a personal exemption of $1,500 as head of a family. As an alternative to the claim for personal exemption, petitioner contends he is entitled to a credit for a dependent in the amount of $400. Findings of Fact Petitioner is an individual residing at 600 East Fifth Avenue, Knoxville, Tennessee. His legal residence is in Jacksonville, Florida. He filed his income tax return, on a cash basis, for the calendar year 1941 with the collector of internal revenue for the district of Florida. During 1941 petitioner was president and majority stockholder of the 7-Up Bottling Co. at Jacksonville, *245 Fla. He had engaged in negotiations for the sale of his stock to C.V. and S.E. Jones in 1940, but the sale was never consummated. In 1941, C.V. Jones and S. E. Jones brought suit against petitioner for damages in the amount of $150,000 for an alleged breach of contract for the sale of his stock. Petitioner engaged counsel, who successfully defended him in the Circuit Court and the Supreme Court of Florida. He paid his attorneys in the taxable year the sum of $800 for their services in connection with this litigation, which was a reasonable fee for the services performed, and he claimed a deduction in his income tax return for this expenditure. Petitioner owned real estate in Knoxville from which he received income in the tax year in the amount of $3,000, but his principal source of income arose from his ownership of the 7-Up Bottling Co. stock, which he held for the production of income. He received $9,000 as salary and dividends from the Bottling Co. in 1941. He paid income tax on all these receipts in that year. During 1941, petitioner lived in Knoxville with his unmarried sister who was about 59 years old. They lived in a house which the sister owned, having received it as *246 a gift from their mother in 1936. In 1941, this house had a fair market value of from $5,000 to $6,000, and would probably have rented for about $45 per month. The sister also owned another small house which petitioner had given her and which rented for $12 per month. These were her only assets and she had no income from any other source. She was suffering in 1941 from injuries to her hip and knee which she had sustained in 1937 or 1938 as the result of being struck by a taxicab, and it was necessary, as a result, for her to rest every afternoon. She had never been gainfully employed, or received any training or experience for such work. Petitioner considered that he had a moral responsibility to support her, since he had promised his mother before her death to do so. Petitioner owned most of the furniture in the house occupied by his sister and himself. He bought all of the groceries in 1941, for which he paid about $30 per month. He paid all the utilities bills, in the amount of $7 to $9 per month. He paid about $20 a month for taxes, upkeep and repairs on the house. Petitioner also gave his sister at least $100 each month during 1941 for her clothing and other expenses, in addition *247 to the payment of household expenses as indicated above. Petitioner and his sister discussed together the affairs relating to the management of the house, any improvements which his sister might wish to have made to the house, or any new furniture which she wanted. She followed his suggestions with reference to these matters, and when any new furniture was bought, petitioner made the purchase. His sister occasionally went away from Knoxville for visits, but she always consulted petitioner's convenience with respect thereto. Petitioner was the head of a family during the taxable year. Opinion KERN, Judge: The first of the two issues before us arises from respondent's disallowance of a deduction claimed by petitioner, under section 23 (a) (2) of the Internal Revenue Code, for an expenditure of $800 for legal expenses in connection with petitioner's defense of an action brought against him seeking damages for an alleged breach of a contract to sell the stock in the 7-Up Bottling Co. which petitioner owned. Section 23 (a) (2) of the Code reads as follows: SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: *248 (a) EXPENSES - * * *
(a) NON-TRADE OR NON-BUSINESS EXPENSES. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. Respondent justifies the disallowance of this item on the ground that it was a personal expense, not deductible under the statute. Petitioner contends it was an expense paid during the year "for the management, conservation, or maintenance of property held for the production of income." That petitioner held the stock of 7-Up Bottling Co. for the production of income, and that the expenditure involved in this proceeding was reasonable and necessary, are points upon which there is no dispute. The negotiations which gave rise to the litigation, in connection with which the expenses in question were incurred and paid, were in the nature of a business transaction, involving the sale of income producing property and the litigation bore "a reasonable and proximate relation to the * * * management * * * of property held for" the purpose of producing income. These *249 facts distinguish this case from John W. Willmott, 2 T.C. 321. That negotiations concerning the sale of income producing property constitute "management" thereof seems to us to be self-evident. See concurring opinion in Mary Lily Bingham Trust, 2 T.C. 853, 860. Petitioner relies principally upon Trust U/W of Mary Lily (Flagler) Bingham v. Commissioner, 325 U.S. 365 (June 4, 1945). The Supreme Court discussed the purpose and provisions of section 23 (a) (2) in some detail. Pertinent to the resolution of the issue now before us, is the following language: * * * Section 23 (a) (2) is comparable and in pari materia with § 23 (a) (1), authorizing the deduction of business or trade expenses. Such expenses need not relate directly to the production of income for the business. It is enough that the expense, if "ordinary and necessary," is directly connected with or proximately results from the conduct of the business. [Citing Kornhauser v. United States, 276 U.S. 145; Commissioner v. Heininger, 320 U.S. 467.]The effect of § 23 (a) (2) was to provide for a class of non-business deductions coextensive with the business *250 deductions allowed by § 23 (a) (1), except for the fact that, since they were not incurred in connection with a business, the section made it necessary that they be incurred for the production of income or in the management or conservation of property held for the production of income. [Citing McDonald v. Commissioner, 323 U.S. 57 and H. Rep. No. 2333, 77th Cong., 2d Sess., pp. 87-88.] Since there is no requirement that business expenses be for the production of income, there is no reason for that requirement in the case of like expenses of managing a trust, so long as they are in connection with the management of property which is held for the production of income. * * *
* * * Section 23 (a) (2) does not restrict deductions to those litigation expenses which alone produce income. On the contrary, by its terms and in analogy with the rule under § 23 (a) (1), the business expense section, the trust, a taxable entity like a business, may deduct litigation expenses when they are directly connected with or proximately result from the enterprise - the management of property held for production of income. * * * We need look no further for authority to sustain *251 petitioner's claim for the deduction. Petitioner held the stock for the production of income, and in the course of his management of the property he undertook the negotiations which led to the litigation. The expenses which he paid were reasonable and necessary, and proximately resulted from his management of this income-producing property. The deduction should have been allowed. The cases upon which respondent relied ante-date the Bingham case, supra, and in so far as they are in disagreement with that case, are, of course, invalid authority. Remaining for determination is the second question, whether petitioner is entitled to the exemption provided by section 25 (b) (1) of the Internal Revenue Code, as amended by sections 111 (a) and 118 of the Revenue Act of 1941; or, if not, whether he is entitled to a credit for a dependent. The facts are set forth fully in our findings, and will not be repeated here. The immediate question is whether petitioner is entitled to the personal exemption which was allowed taxpayers who were heads of families. Here he lived with and paid all the household and the major share of the personal expenses of an elderly unmarried *252 sister, who had an income of $12 per month, and who owned the house in which they lived. The evidence establishes to our satisfaction the inability of the sister to earn her own living, by reason of her lack of any training or experience, and her physical disability. We are also satisfied that she was dependent upon petitioner, who was her only close relative and who was morally obligated to support her. It is true that she owned the house in which they lived, and another small property which yielded a monthly rental of $12. But the evidence indicates that the income from both properties, if both had been devoted to incomeproducing purposes, would not have been sufficient to support her. We have allowed the exemption in cases where the dependents had some property or income, but not enough to render them independent. Jos. N. Kallick, 45 B.T.A. 992. B. Nathaniel Richter, 4 T.C. 271. The fact that the property owned by the dependent sister consisted principally of the house in which the parties lived is not significant, in view of the fact that the regulation requires only that the taxpayer actually support and maintain "in one household one or more individuals *253 who are closely connected with him by blood relationship, * * * and whose right to exercise family control and provide for these dependent individuals is based upon some moral or legal obligation." Section 19.25-4, Regulations 103. This right to exercise family control is generally the right to determine the manner in which the affairs of the household shall be conducted, and this right falls naturally to him who furnishes the means for its support and maintenance. See 1942-1 C.B. 81. The situation presently before us meets the requirements of the statute and the regulations, and we conclude the respondent erred in disallowing the exemption. Decision will be entered for the petitioner.