## STUART v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3098.

Circuit Court of Appeals, First Circuit.

June 3, 1936.

MORTON, Circuit Judge, dissenting.

Richard Wait, of Boston, Mass. (Abbot P. Mills, of Washington, D. C., on the brief), for petitioner for review.

Morton K. Rothschild, Sp. Asst. to the Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

The petitioner seeks to review a decision of the Board of Tax Appeals refusing to allow the petitioner to deduct from his gross income for the calendar year 1930 the sum of $35,633,55, paid by him to a trust of which he was trustee, to reimburse the trust for a loss of an improper investment in which he had participated, and, further, to deduct $7,411.26 paid by him as an individual to attorneys and accountants in connection with the same loss.

The issues arise under section 23 of the Revenue Act of 1928 (26 U.S.C.A. § 23 and note), which section provides that "in computing net income there shall be allowed as deductions: (a) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *

"(e) In the case of an individual, losses sustained during the taxable year * * * (1) if incurred in trade or business; or (2) if incurred in any transaction entered into for profit, though not connected with a trade or business."

The questions to be determined are whether the findings of the Board are supported by any substantial evidence, and whether upon their findings, if so supported, the petitioner as a matter of law was engaged in a regular business in which the losses and expenses occurred.

The Board of Tax Appeals found the following facts: Since 1904 the petitioner has been trustee under a trust created by the will of his grandfather, who died in 1904, said trust estate consisting of property of the value of $500,000. The other trustees originally were the petitioner's half brother, Arioch Erickson, and his mother, Susan M. Stuart. The latter was never active in the affairs of the trust, the details of which were attended to by the petitioner and Erickson. The mother died in 1926, since which time the petitioner and Erickson have been sole trustees of this trust.

Since 1915 the petitioner has also been trustee under a trust for the benefit of his father, involving property worth $500,000, and since 1926 he has been trustee of a trust involving his mother's estate.

During the taxable year 1930, and for many years prior thereto, the only activities of the petitioner have consisted of acting as trustee under the above-mentioned trusts and attending to his own investments. In his income tax return for 1930, and whenever he filed papers stating his business, he designated his occupation as that of trustee.

Since 1904 the trustees made arrangements with a law firm in Boston by which the petitioner and Erickson should each have a room in the offices of the law firm, and have the use of its stenographers, bookkeepers, and legal advice, in return for the firm receiving the commissions due from the trust. The petitioner was at his office day after day, but all the clerical work connected with the management of the trust was done by the employees of the law firm above mentioned.

The petitioner in his income tax return never returned as income any commissions to which he was entitled as trustee, for the reason that under the arrangement with the law firm all such commissions were paid to the law firm, though undoubtedly they should have been returned by him as income.

In 1914, at the suggestion of Erickson, a loan of $75,000 was made from the funds of the trust created by the grandfather of the petitioner, to a company known as the Quigley Furnace & Foundry Company, in which Erickson was financially interested. The Quigley Company, as it will be hereinafter referred to, was a corporation which had been formed in 1912 and which had not prospered, and in 1914 it incurred a loss of $84,000. The petitioner knew the condition of the company and of Erickson's interest in it, but he consented to the loan being made on Erickson's assurance that if anything went wrong with the loan, he (Erickson) would stand the loss.

The Quigley Company became bankrupt, with the result that out of the original loan of $75,000 there was a loss of trust funds to the amount of $71,267.10, for which the trustees were jointly and severally liable.

As bearing on the allowance of counsel and accountants' fees, the Board found that, in connection with the filing of an account in the estate of the mother, Susan M. Stuart, the question arose: From what source were the funds for the loan to the Quigley Company advanced, whether from the trust created by the grandfather, or from the mother's property?

Investigation of the facts in that connection by an attorney and by a firm of certified public accountants employed by the petitioner disclosed as a result of their investigations that the loan of $75,000 to the Quigley Company was advanced from the trust created under the will of the grandfather, and counsel advised the petitioner and Erickson that, as such a loan was an improper investment of the trust funds, they were jointly and severally liable, and therefore the petitioner was liable for the whole amount if it could not be obtained from Erickson.

Petitioner brought a bill in equity to compel Erickson to make good the loss. Counsel advised the petitioner that Erickson's verbal agreement as to being responsible himself for the entire loss to the trust would be unenforceable in the Massachusetts courts; and, after extended litigation, and the employment of additional counsel, the case was settled before it came to trial, and the petitioner and Erickson, in May, 1930, each paid into the trust the sum of $35,633.55, representing one-half of the loss to the trust. For the services performed by counsel and accountants, the petitioner in 1930 paid $7,411.26, for which he claims a refund based upon the contention that these expenses were incurred in his business and should have been allowed as a deduction from the petitioner's gross income in his income tax return for 1930.

The Board further found that the petitioner's activities as trustee were not "for the purpose of obtaining a livelihood, or profit," Bouv.Law Dict. vol. 1, title, Business, p. 406; and held that the term "trade or business" refers to an established trade or business, and therefore, in order to deduct a loss under section 23 (e) (1) of the Revenue Act of 1928 (26 U.S.C.A. § 23 note), it must be shown that the loss was sustained in the regular and established business of the taxpayer as distinguished from isolated transactions; that the sum of $35,633.55 paid to reimburse the trust was not a loss incurred in his regular trade or business; and that the sum paid to attorneys and accountants as fees during the year 1930, therefore, was not ordinary and necessary expenses incurred in carrying on

a trade or business, and the taxpayer was not entitled to a refund.

The taxpayer also claims that he is entitled to a deduction of $35,633.55 as his share of the loss incurred by the loan to the Quigley Company on the ground that it was a transaction entered into for profit; but any profits arising from the loan, if a proper loan of trust funds, would have belonged to the trust, and the petitioner testified he never expected personally to profit therefrom. In any event, his interest in any profits as beneficiary under the trust would not have been sufficient to comply with subparagraph (e) (2) of section 23 of the 1928 act (26 U.S.C.A. § 23 note). It follows, therefore, as the Board held, that, if the amount was a legal deduction from the taxpayer's gross income for the year 1930, it must be by reason of having been incurred in a trade or business in which he was engaged as an individual.

The Board also held that, since the trustees restored to the trust the amount of the loss, and under the will were entitled to receive one-half the income during their lives, and upon their death the income was to be distributed among their children, there was no loss to them. We think the Board could not be sustained on this ruling. Before restoring the loss to the trust, the petitioner had $35,633.55 which he could use as he pleased. After he had paid it into the trust, it went from his control, and he had only the income, whatever that might be, as a beneficiary under the trust and during his life.

While we do not agree with all the reasons assigned for the Board's conclusions, we think their final conclusion upon their findings should be affirmed. The petitioner's activities in the management of the trust estates were in his capacity as trustee and not as an individual. It does not appear from the record that he was engaged in any regular business as an individual, unless in the management of his own property, in which the loss did not occur. The restitution by the petitioner of the loss to the trust estate was an isolated case, and the payment of the expenses incurred for counsel and accountants' fees, for which he claims deductions, were in discharge of a liability incurred in his individual capacity and not as trustee, and therefore were not deductible as having been incurred in any trade or business.

This case is not governed by that of Foss v. Commissioner (C.C.A.) 75 F.(2d) 326, or by that of Washburn v. Commissioner (C.C.A.) 51 F.(2d) 949.

In each of those cases the taxpayer was personally caring for, managing, or assisting in managing, large interests of various kinds, but not as a trustee, and by the diversity and size of such interests each could be fairly said to be conducting a regular business. As a result, it was held that the expenses paid in the Foss Case and the losses suffered by the taxpayer in the Washburn Case were individual expenses and losses in the course of a regular business, and were allowed. In this case the regular business activities of the petitioner, if he had such, were in the management of trust estates in his capacity as trustee. As such trustee he might be said to have been engaged in a trade or business within the meaning of the statute; but, when he made the unauthorized loan, the liabilities he incurred were those of an individual. He cannot be said to have acted in his capacity as a trustee. A trustee and an individual are, in law, separate entities, with different rights, obligations, and duties, and are treated as such for taxation purposes. Subtitle B (section 11 et seq.), section 143 of supplement D of subtitle C, and supplement E of subtitle C (section 161 et seq.) of the Revenue Act of 1928 (26 U.S.C.A. §§ 11 et seq., 142, 161 et seq., and notes). So far as the record shows, the petitioner personally had no business outside of his duties as trustee, except that of receiving income from the trusts and caring for his own investments, the extent of which we cannot determine from the record. It does not appear, therefore, as a matter of law, that as an individual he conducted any regular business, at least, any business in which the alleged loss or the expenses of counsel and accountants were incurred.

We think the Board's finding in this case, that the petitioner was not engaged in a regular trade or business, finds support in the record and must stand. At least, from the finding of the Board, it cannot be said, as a matter of law, that he was engaged in a trade or business within the meaning of section 23 (e) (1).

The order of the Board of Tax Appeals is affirmed.

MORTON, Circuit Judge (dissenting).

The petitioner was trustee under a trust created by his grandfather's will. Under Massachusetts practice his appointment would be, and I assume was, made by the

probate court. It imposed on him legal duties and responsibilities for the performance of which he was entitled to compensation. This compensation he turned over to his lawyers, but it was earned by him. In performance of his duties as trustee, he made an improper investment, and he was compelled by law to reimburse the estate for the resulting loss. He also incurred counsel fees and accountant's charges in connection with the matter. The majority opinion holds that he is not entitled to deduct the amount which he paid to the trust estate because the liability was not "incurred in trade or business"; and that he may not deduct the fees and charges because they were not "paid or incurred * * * in carrying on any trade or business."

This seems to me much too narrow a construction of the statute. A compensated trustee managing an estate under appointment by the probate court is certainly engaged in business. Cases in which there was no official appointment stand on an absolutely different footing and involve very different considerations. The petitioner made the bad investment in carrying on that business. The resulting liability arose because he did not do the business properly. If he had not engaged in business, he would not have incurred the liability or the loss. In the majority opinion it said that, "when he (the petitioner) made the unauthorized loan (of trust funds) the liabilities he incurred were those of an *individual*. He cannot be said to have acted in his capacity as a *trustee*." (Italics supplied.) This seems to me a non sequiter, legally speaking; it is not true that individual liability for an act precludes the possibility that it was done in a representative capacity; such a ruling is inconsistent with recognized principles. The fact that the liability to make restitution rests on the petitioner individually does not prevent the reimbursement loss and expenses from having been sustained by him in the business of managing the trust estate. I think the loss was clearly deductible under section 23 (e) (1), and that the Board of Tax Appeals made an error of law in holding to the contrary. I also think that the expenses for counsel and accountants necessary in connection with the matter should be considered as part of the loss, and were therefore deductible either under the section just referred to or section 23 (a).