**WALLACE'S ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 4417.**

Circuit Court of Appeals, Fourth Circuit.

Jan. 30, 1939.

Paul F. Myers, of Washington, D. C. (Martin W. Meyer and Thomas J. Fitzgerald, Jr., both of Washington, D. C., on the brief), for petitioners.

John A. Gage, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

The Commissioner of Internal Revenue, in determining the income tax of Mildred F. Wallace for the calendar year 1932, charged her with the receipt of commissions in the sum of $26,860 as executrix of the estate of her husband, and disallowed a deduction of $10,000 paid by her to a co-executor who acted as her agent in connection with the performance of her duties to the estate. The question in the case is whether the additional tax of $2,240.82 determined by the Commissioner was properly assessed.

Hugh C. Wallace died on January 1, 1931 at Tacoma, Washington. His will was probated in that State, and in February, 1931, Mrs. Wallace and Forbes P. Haskell, Jr., qualified as executors. The estate consisted of real and personal property of the value of $2,000,000 located in the State of Washington, the District of Columbia, and Paris, France. The executors had power under the will to sell the property and reinvest the proceeds. Haskell was president of a bank in Tacoma, and was well qualified to handle the estate, and he was familiar with the assets and the business affairs of the deceased through close business relations with him in his lifetime. Under the terms of the will, a legacy of $15,000 was bequeathed to Haskell, at his election, in lieu of any other allowance for executor's fees. He elected to take the legacy.

Mrs. Wallace decided to return to her home in Washington, D. C., after her husband's death; and it became necessary for her, under the law of the State of Washington (Sec. 1457 of Remington's Revised Statutes of Washington), to appoint an agent or attorney in writing to represent her as co-executrix in the county where the estate was being probated. Accordingly she executed two writings. On March 2, 1931, she wrote to the attorneys for the estate a letter which contained the following statement:

"In view of the provision in the will that Mr. Forbes P. Haskell, Jr., shall receive $15,000.00 in lieu of any other allowance to him as executor, and in view of the exacting service required of him and the responsibility imposed upon him, I wish at the end of the administration to give to him out of whatever fees shall be allowed to me the sum of ten thousand dollars, ($10,000.00), which will make his total fee $25,000.00. I consider this right and proper under all the circumstances, and when you come to make out the final papers settling the estate you are hereby authorized to do whatever is necessary to carry out this wish.

"You will please hold this letter until the court has made an allowance. In the meantime, however, it is my understanding that it constitutes an assignment to Mr. Haskell of $10,000.00 to be paid out of executor's fees to be allowed to me in the settlement of the estate."

On March 7, 1931, Mrs. Wallace appointed Haskell by formal writing to act as her agent during her absence from the State "to execute applications to the court,

to carry out orders of the court and to do and perform such other acts as the will of Hugh C. Wallace, deceased, authorizes". This paper was filed in the Probate Court on March 25, 1931. During Mrs. Wallace's absence, many of the necessary routine duties that otherwise would have been performed by both the executors were performed by Haskell, who was the active executor of the estate. He kept all the books relating to the affairs of the estate, handled all details concerning such affairs and attended conferences with the attorneys and others. Mrs. Wallace corresponded with him, exercised her judgment as an executrix and performed all such work in connection with the administration of the estate as was possible for her to perform while absent from the jurisdiction in which the estate was being administered.

The election of Haskell to take the legacy of $15,000 in lieu of fees was approved by the Probate Court on August 27, 1931; and on the same day the court fixed the fee of Mrs. Wallace at $26,860 payable upon the approval of the final report. The report was filed on May 27, 1932 and approved on June 24, 1932. Thereafter, in the same year, the estate issued its check for $10,000 to Mrs. Wallace in part payment of her fee, and she endorsed it and delivered it to Haskell in pursuance of the arrangement above described. Mrs. Wallace did not report the sum of $10,000 as income in her return. Haskell did report the receipt thereof and paid an income tax thereon.

Upon these facts the Board held that not enough was shown about the activities of Mrs. Wallace to enable it to determine whether or not these activities constituted a business, or whether or not the expenditure in question was an ordinary and necessary expense of that business, within the meaning of those terms, as used in section 23(a) of the Revenue Act of 1932, c. 209, 47 Stat. 169, 179, 26 U.S.C.A. § 23(a). It was said that the expenditure had elements of a gratuity about it, and may have been a personal rather than a business expense; and that the question at issue was a difficult one and could not be answered on the record in such a way as to reverse the action of the Commissioner.

In support of his conclusion that Mrs. Wallace's activities in the settlement of her husband's estate did not constitute the carrying on of a trade or business, the Commissioner refers to Ames v. Commissioner, 8 Cir., 49 F.2d 853, and Refling v.

Burnet, 8 Cir., 47 F.2d 859, in which it was held that the process of liquidation of an estate in the hands of an executor may not be considered the carrying on of a trade or business by the estate, so as to permit the deduction of monies disbursed in payment of the testator's debts from the gross income in order to determine the net income of the estate subject to the payment of income tax. Reference is also made to Blair v. Wilson Syndicate Trust, 5 Cir., 39 F.2d 43, and Crocker v. Malley, 249 U.S. 223, 39 S.Ct. 270, 63 L.Ed. 573, 2 A.L.R. 1601, which hold that trustees, organized to hold and liquidate property, are not associations doing business within the meaning of the income tax law; and also to such cases as Zonne v. Minneapolis Syndicate, 220 U.S. 187, 31 S.Ct. 361, 55 L.Ed. 428; McCoach v. Minehill & S. H. Railway Co., 228 U.S. 295, 33 S.Ct. 419, 57 L.Ed. 842; United States v. Emery, Bird, Thayer Realty Co., 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825 (reviewed by this court in United States v. Atlantic Coast Line Co., 4 Cir., 99 F.2d 6), where it was held that corporations, formed merely to hold property and to receive and distribute the income therefrom, did not engage in business within the meaning of the corporation tax law of 1909 (36 Stat. 112, § 38).

But these cases do not justify the holding that an executor or trustee when he performs the duties of his position for pay is not engaged in business. The distinction between the activities of an estate and the activities of the representatives of the estate are obvious. There are many capacities of a business nature in which an individual or a corporation may serve an estate in the course of liquidation; and it is common knowledge that a substantial part of the business of certain corporations consists of the services which they render as executor or trustee for a specified compensation. The Board of Tax Appeals itself in Abbott v. Commissioner, 38 B.T.A. 1290, Case No. 167, has recently held that a lawyer in general practice, who derived a large part of his income for services rendered as executor or trustee, was engaged in business in so doing, and was entitled to deduct from his gross income as a business expense a sum paid to certain beneficiaries in settlement of a liability incurred in the administration of a trust. Cf. Tallman v. Commissioner, 37 B.T.A. 1060, Case No. 156.

The principle enunciated in this decision is applicable in the pending case, and

no distinction arises because of the fact that the taxpayer was not regularly or continuously engaged in the business of performing the services of an executor. Section 23(a) of the Revenue Act of 1932 does not limit the right of a taxpayer to deduct expenses to business regularly carried on by him, and in this respect the statute differs from section 204(a) and (b) of the Revenue Act of 1921, 42 Stat. 227, 231, discussed in Rogers v. United States, Ct.Cl., 41 F.2d 865; 379 Madison Ave. v. Commissioner, 2 Cir., 60 F.2d 68, and in Burnet v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397; and also from section 206(a) (1) of the Revenue Act of 1924, 43 Stat. 253, 260, discussed in Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389. In Stuart v. Commissioner, 1 Cir., 84 F.2d 368, 107 A.L.R. 438, the conclusion was reached in both the majority and the dissenting opinions that a compensated trustee managing three estates of relatives was engaged in trade or business within the meaning of the statute, although the deduction claimed in that case was disallowed on the ground that the liability was incurred as an individual and not as a trustee.

The meaning of the term "business" was described by Judge Chesnut in the decision of this court in Cecil v. Commissioner, 4 Cir., 100 F.2d 896, decided January 9, 1939, as follows:

"The term 'business' as here used was evidently not intended to have a technical meaning but to be understood in its ordinary acceptation. It is a comprehensive term which, as used in the corporation income tax law of 1909, was defined by the Supreme Court in Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312, and Von Baumbach v. Sargent Land Co., 242 U.S. 503, 515, 37 S.Ct. 201, 204, 61 L.Ed. 460, as including 'that which occupies the time, attention, and labor of men for the purpose of a livelihood or profit.' In United States v. Atlantic Coast Line Co., 4 Cir., 99 F.2d 6, 7, this court, in an opinion by Judge Northcott, approved. the definition given in Black's Law Dictionary, that ' "business" is a very comprehensive term and embraces everything about which a person can be employed'. In the adjudicated cases which have applied the word as used in section 23(a) of the Revenue Act of 1928 [26 U.S. C.A. § 23(a)], and in corresponding sections of other income tax statutes, there is the recurrent expression that the enterprise must have been undertaken for 'gain or profit'; and in many of the cases the test is stated in terms which generally distinguish between 'business' and 'pleasure'. Thus in Doggett v. Burnet, 62 App.D.C. 103, 65 F.2d 191, 194, the Court of Appeals of the District of Columbia, said: 'The proper test is not the reasonableness of the taxpayer's belief that a profit will be realized, but whether it is entered into and carried on in good faith and for the purpose of making a profit, or in the belief that a profit can be realized thereon, and that it is not conducted merely for pleasure, exhibition, or social diversion.'

"In George v. Commissioner, 22 B.T.A. 189, 195, the Board said: 'The real test is whether the operation was carried on as a business for gain or whether it was carried on for recreation or pleasure. And this question is largely a matter of the intent of the petitioner.' "

There can be no doubt that Mrs. Wallace undertook the duties of executrix with intent to secure compensation therefor; and there can be no doubt that the services rendered through her own efforts and through the instrumentality of her agent were of value to the estate. She was allowed a substantial fee by the Probate Court under the power conferred upon the court by chapter 156 of the Laws of Washington of 1917, p. 687, § 158 (Rem.Rev. Stat. § 1528), to allow to an executor "such compensation as to the court shall seem just and reasonable, based on the services rendered". See In re Hagerty's Estate, 97 Wash. 491, 166 P. 1139. Under these circumstances, it is not reasonable to infer that her services were insignificant, or to deny them the characterization of business activities, merely because they were described in the stipulation of fact in general terms rather than in specific detail.

■ Nor may it be fairly concluded that the expenditure to her colleague as her agent was in the nature of a gift rather than a payment for services rendered. Haskell did not consider it a gift, for he reported it in his return as part of his income. There was every reason to consider it an ordinary and necessary expense for services rendered, since the State statute required her to appoint an agent to represent her as executrix during her absence. Haskell accepted the appointment and did the work. The letter of March 2, 1931, wherein she directed the attorneys of the estate to pay $10,000 to Haskell out of her fees as executrix, and the power of attor-

ney of March 7, 1931, wherein she appointed Haskell as her agent to act during her absence, were separate writings, and did not refer one to the other. But in the absence of any other explanation, the only reasonable inference to be drawn from them, when considered together, is that there was an understanding or agreement between the parties by which Haskell agreed to act as Mrs. Wallace's agent during her absence, in consideration of the sum of $10,000, to be deducted from her commissions.

In our opinion the taxpayer was engaged in business within the meaning of the statute while performing the duties of executrix in the administration of the estate, and the payment to Haskell constituted an ordinary and necessary expense of that business. This conclusion is supported by an appreciation of the realities of the situation. The arrangement for the payment of $10,000 of the fee of the taxpayer to Haskell was made shortly after the death of the testator in the early part of the administration of the estate. It was intended from the first that the greater part of the services should be rendered by Haskell, and that the greater part of the fees of the executors should be paid to him. It is true that the entire sum of $26,860, allowed to her by the Probate Court, passed through her hands; but so far as $10,000 thereof was concerned, she acted merely as a conduit for the transfer of the money from the estate to Haskell. In a very real sense, it was neither earned by her nor paid to her, but was paid directly to Haskell for the services he had rendered the estate.

The decision of the Board of Tax Appeals is reversed.