JULIUS A. HEIDE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9093. Promulgated February 17, 1947.

*Myles B. Amend, Esq.*, for the petitioner.
*William F. Evans, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: The Commissioner has determined a deficiency of $1,528.48 in petitioner's income tax for the year 1943. The deficiency is due to the Commissioner's action in disallowing as a deduction a payment of $3,000 which the petitioner made in the taxable year as

a surcharge in connection with his trusteeship in four trusts. The adjustment is explained in the deficiency notice as follows:

(a) It is held that the deduction of $3,000.00 claimed for surcharge paid in connection with judicial settlement of trust accounts is not allowable under section 23(a)(2) of the Internal Revenue Code as amended. It is held, further, that no deduction in respect thereof is allowable under the provisions of any other subsection of section 23 of the Internal Revenue Code as amended.

Petitioner, by an appropriate assignment of error, contests the correctness of this adjustment made by the Commissioner. On account of the "forgiveness" feature of the income tax laws of the periods involved, the deficiency has been determined for the year 1943 although the deduction involved was claimed for 1942.

The facts have been stipulated and we adopt them as our findings of fact. They may be summarized as follows:

The petitioner resides in New York City and filed his tax returns for the years 1942 and 1943 with the collector for the second district of New York.

The petitioner is an executive of a candy manufacturing business in New York City. That is his only business.

The petitioner and his three brothers were cotrustees in each of four trusts created in 1914 by the petitioner's father. The income from each of the four trusts was to be paid to one of the four sisters of the petitioner. Each trust was to terminate upon the death of its respective beneficiary and the corpus is then to be distributed generally to the heirs of that beneficiary. Under the trust instruments the trustees were authorized to manage and handle the corpus of each trust, to invest funds, collect dividends and other income, and distribute same according to the trust provisions.

From the time of the assumption of the duties of the trust to 1938, the petitioner and his cotrustees had collected no fees or commissions for services to the trust estates and had made no accounting of their affairs. On November 25, 1939, the four cotrustees instituted proceedings in the Supreme Court of the State of New York in each of said trusts for an intermediate accounting for the period April 13, 1914, to December 31, 1938, but each proceeding was subsequently extended into a final accounting for these trustees. In their accounts the four trustees made claim for commissions on income and principal which they alleged were due from each of the four trusts.

In the accounting proceedings objections to the proposed accounts were filed by certain remaindermen and by the special guardian appointed by the court to protect the interests of infant and incompetent remaindermen. These objections in general related to (a) allegations that certain of the trust securities had been improvidently and negligently exchanged or held after depreciation and default, and (b) the trustees' method of computing principal commissions and their failure

to take or reserve certain of the income commissions. The New York Supreme Court referred the four proceedings to a referee to take and state the accounts, to hear the objections, and to report thereon to the court. After extensive and protracted hearings before the referee, the parties to the proceedings entered into stipulations of settlement which provided, among other things, for (a) the withdrawal of all objections, (b) the waiver by the trustees of all principal and income commissions for acting as trustees of these trusts and the resignation of such trustees, and (c) the payment by the trustees of $3,000 to each of the four trust estates.

These stipulations of settlement were approved by the referee in his reports to the court. The stipulations of settlement and the referee's reports were all confirmed by orders of the Supreme Court of the State of New York, which also approved the accounts as amended and discharged the trustees. Pursuant to the terms of settlement, the petitioner in 1942 paid his proportionate share to the four trusts, which payments totaled $3,000. The petitioner in his income tax return for 1942 claimed these payments as deductions, itemizing the $3,000 as follows:

| | |
|---|---:|
| Pro rata share of surcharge paid Nov. 25, 1942, pursuant to order of Supreme Court, New York County, upon judicial settlement of the account of trustees of trust for the benefit of Clara Heide Magee__ | $750.00 |
| Pro rata share of surcharge paid December 14, 1942, pursuant to order of Supreme Court, New York County, upon judicial settlement of the account of the trustees of the trust for the benefit of Johanna M. Leyendecker _____ | 750.00 |
| Pro rata share of surcharge paid December 14, 1942, pursuant to order of Supreme Court, New York County, upon judicial settlement of the account of the trustees of trust for the benefit of Marie Heide_____ | 750.00 |
| Pro rata share of surcharge paid December 14, 1942, pursuant to order of Supreme Court, New York County, upon judicial settlement of the account of trustees for the benefit of Bertha Heide_____ | 750.00 |
| | 3,000.00 |

. In the case of *John Abbott*, 38 B. T. A. 1290, we held that one who regularly engages in the business of serving for pay as a trustee and as an executor and incurs and pays a liability growing out of the conduct of such business, is entitled to a deduction for the amount so paid. In the *Abbott* case protracted and extensive litigation seemed imminent over a claim by the beneficiaries of a testamentary trust that the trustees, of whom Abbott was one, had mismanaged the trust. Abbott's aged cotrustee was in ill health and was much disturbed by the threatened litigation, and Abbott wished to be rid of the matter. Therefore, a settlement was agreed upon between the interested parties, under which the trustees paid $17,500 in settlement of the claims of mismanagement and the accounts as filed were allowed.

Of this, Abbott paid $10,000. In allowing Abbott the deduction, we said:

From the findings, which are substantially a narrative of the evidence, it is beyond doubt that the petitioner's regular business included serving for pay as a trustee and as an executor. In the course of this business and as an incident thereof he was required to pay $10,000 as a liability growing out of the conduct of the business. Clearly such circumstances of the payment support its deduction, and it should have been allowed. *Kornhauser* v. *United States*, 276 U. S. 145. Respondent cites *Stuart* v. *Commissioner*, 84 Fed. (2d) 368 and *Stephen H. Tallman*, 37 B. T. A. 1060, to support the disallowance; but in both, the ground of the disallowance was that the particular occasion for the taxpayer's payment was liability in an isolated fiduciary activity which was not itself incidental to a trade or business regularly carried on. They are, therefore, unlike this case and distinguishable from it in crucial facts.

Petitioner concedes that he was not in the business of being a trustee or executor, as was the case in *John Abbott, supra,* and that, if the law had remained the same as it was when the *Abbott* case was decided, he could not prevail in the instant case. However, petitioner argues that the *Abbott* case is clearly authority for the proposition that the $10,000 surcharge payment which Abbott made in that case was "an ordinary and necessary expense" and that since then the law has been amended so as to allow the deduction of just such payments as "nonbusiness expenses" to taxpayers who do not make them in a business regularly carried on by them. Petitioner cites section 23 (a) (2), carried in the Revenue Act of 1942 as an amendment to the Internal Revenue Code.[1] Petitioner argues that, if the *Abbott* case was correct in allowing the $10,000 deduction to the taxpayer because it was incurred as an ordinary and necessary business expense in a business in which he was engaged, it is now deductible by petitioner in the instant case because subsequent to the *Abbott* case Congress has amended the law to allow the deduction of just such expenses to those who have incurred them in the same manner as Abbott did where their activities in that respect were not sufficient to classify them as being in the business of acting as trustees or executors. In support of this argument petitioner cites *Bingham's Trust* v. *Commissioner*, 325 U. S. 365, in which the Supreme Court said:

\* \* \* Section 23 (a) (2) is comparable and in pari materia with § 23 (a) (1), authorizing the deduction of business or trade expenses. Such expenses need not relate directly to the production of income for the business. It is enough that the expense, if "ordinary and necessary," is directly connected

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

\* \* \* \* \* \* \*

(2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

with or proximately results from the conduct of the business. *Kornhauser* v. *United States*, supra, 276 U. S. 152, 153; *Commissioner* v. *Heininger*, supra, 320 U. S. 470, 471. The effect of § 23 (a) (2) was to provide for a class of non-business deductions coextensive with the business deductions allowed by § 23 (a) (1), except for the fact that, since they were not incurred in connection with a business, the section made it necessary that they be incurred for the production of income or in the management or conservation of property held for the production of income. * * *

It seems clear to us that, in view of what the Supreme Court said in the *Bingham* case and what we decided in the *Abbott* case, petitioner must prevail.

It is clear from the facts which have been stipulated that the $3,000 which petitioner paid out as a result of the compromise agreement grew directly out of his management and conservation of the trust property of which he was one of the trustees and in a suit which he and the other trustees had brought for settlement of their final accounts and for allowances of trustees' commissions. There is no contention by respondent that the payment had to be made by petitioner because of any corrupt management of the trust property. He and his three brothers, who were cotrustees, had simply held on to some investments of the trusts too long and there had been losses and, rather than have extended litigation over these trust matters, they agreed to pay $3,000 each and to forego their commissions and resign as trustees. Respondent says himself in his brief: "There seems to have been no charge of dishonesty directed at the trustees, certainly the findings of the referee indicate only negligence and bad judgment." Under these circumstances we see no reason why petitioner should not be allowed the deduction which he claims under section 23 (a) (2) of the Code.

Regulations 111, section 29.23 (a)–15, relating to nontrade of non-business expenses, is printed in the margin.[2]

Respondent does not contend that the $3,000 payments which the petitioner made were not reasonable in amount for the purposes paid. His contention simply is that the $3,000 is not deductible under section 23 (a) (2) of the code, or any other subsection of section 23,

---

[2] SEC. 29.23 (a)–15. NONTRADE OR NONBUSINESS EXPENSES.—(a) *In general.*—Subject to the qualifications and limitations in chapter 1 and particularly in section 24, an expense may be deducted under section 23 (a) (2) only upon the condition that:

(1) it has been paid or incurred by the taxpayer during the taxable year (i) for the production or collection of income which, if and when realized, will be required to be included in income for Federal income tax purposes, or (ii) for the management, conservation, or maintenance of property held for the production of such income; and

(2) it is an ordinary and necessary expense for either or both of the purposes stated in (1) above.

* * * * * * *

Expenses, to be deductible under section 23 (a) (2), must be "ordinary and necessary," which presupposes that they must be reasonable in amount and must bear a reasonable and proximate relation to the production or collection of taxable income or to the management, conservation, or maintenance of property held for the production of income.

because it was not paid for the production or collection of income or for the management, conservation or maintenance of property held for the production of income.

We think that the surcharge payments which petitioner made as trustee to each of the four trusts were directly connected with "the production or collection of income," as those terms are used in the statute. The laws of the State of New York provide for the payment of commissions to trustees. See Civil Practice Act, sec. 1548. Petitioner and his cotrustees, in the legal proceedings brought by them for a judicial settlement of their accounts as trustees, asserted claims for the commissions due them from each of the four trusts. These commissions would have constituted taxable income to petitioner and his cotrustees. Petitioner and his cotrustees were unsuccessful in collecting their commissions. But the fact that they were unsuccessful is not material to the right of petitioner to have the deduction which he claims. Cf. *James A. Connelly*, 6 T. C. 744. An extensive and protracted litigation was settled by payment of the $3,000 on the part of each of the four trustees. The payments grew directly out of petitioner and his cotrustees acting as fiduciaries and their efforts to collect commissions and have their final accounts approved. The payments were not made under circumstances which would deny their deduction on the ground of public policy.

The foregoing facts being true, we think petitioner is entitled to the claimed deduction under the rationale of *John Abbott, supra,* and *Bingham's Trust* v. *Commissioner, supra.* We so hold.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

---

HILL, *J.*, dissenting: We decided a like question in *Estate of Edward W. Clark, III*, 2 T. C. 676, contrary to the holding in the present proceeding. That case is totally ignored in the majority opinion.

Clark qualified in 1915 as executor and residuary trustee under the will of one Taylor who died a resident of Philadelphia County, Pennsylvania. Clark filed his first and final account as executor and his first account as trustee with the Orphans' Court in 1939. In a proceeding in that year in the Orphans' Court for the settlement of his accounts and the fixing of his commissions as such executor and trustee, the Orphans' Court confirmed his accounts and awarded him commissions of $17,500. Included in the commissions awarded was the amount of attorneys' fees of $1,250 paid by Clark in 1939 for legal services rendered in opposing a claim of mismanagement of the trust. Clark claimed a deduction for income tax purposes for 1939 in the amount of such attorneys' fees. The deduction was claimed under section 23 (a) (2), Internal Revenue Code. We denied the deduction

on the ground that "obviously the expense was not paid or incurred 'for the production or collection of income.' Clearly, also, the fees were not paid 'for the management, conservation or maintenance of property held for the production of income'."

I submit that the instant case is not distinguishable from the *Clark* case. In my opinion, the *Clark* case was correctly decided. If so, it is obvious that the majority holding in the present proceeding is incorrect.

The majority opinion is based largely on the holding in *John Abbott*, 38 B. T. A. 1290, and *Bingham's Trust* v. *Commissioner*, 325 U. S. 365.

In the *Abbott* case it was held "that the petitioner's regular business included serving for pay as a trustee and as an executor. In the course of this business and as an incident thereof he was required to pay $10,000 as a liability [for mismanagement] growing out of the conduct of the business," and allowed the deduction of the $10,000 as a business expense. Cases cited in the *Abbott* opinion holding like expenses not deductible were distinguished on the ground that an isolated fiduciary activity (as in the cases cited) did not constitute a trade or business regularly carried on.

It is conceded that petitioner here is not entitled to the deduction in question under subsection (a) (1) as a business expense, but the majority holds that the allowance of the deduction in question in the *Abbott* case under (a) (1) is authority for holding the claimed deduction allowable in the instant case under (a) (2). I think this result does not follow. Under (a) (1) the deduction is allowable if it relates generally to the business of the taxpayer, where as under (a) (2) as here involved the deduction is allowable only if it has a direct relation to the production or collection of income. Therefore, even if the decision in the *Abbott* case on the question there presented be accepted as sound, it is not, in my opinion, authority for the holding in the instant case.

The facts here show that the $3,000 sought to be deducted grew directly and wholly out of the claim for damages for alleged mismanagement of the trust estate. The fact that the claim for damages was being pressed in the proceeding for the settlement of petitioner's accounts as trustee, in which one of the questions to be determined was the amount of petitioner's compensation as such trustee, does not affect the basis of the claim for damages and does not relate it to the question of compensation allowable to petitioner. It is not controverted that petitioner was entitled to compensation as trustee and to me it appears too far fetched for serious consideration to relate a claim of damages based on alleged mismanagement of trust property to the production or collection of income to petitioner. The effect of the alleged mismanagement, if any, could only be reflected in the production or collection of

income of the trusts. The claim for damages implies actionable negligence. The payment of the $3,000 in question was not made to aid petitioner in the administration of the trusts or to aid him in the production or collection of income either of the trusts or of himself individually. In fact, it was not an expense at all, but was the payment of a compensating obligation incurred for failure properly to perform his duties as a trustee.

The fact that petitioner, as part consideration of the settlement of the claim for damages, agreed to forego compensation for services as trustee does not establish that such allowable compensation was minimized or that its collection was imperiled by the claim for damages. It goes to show only that the $3,000 payment was not the full measure of damages to which petitioner agreed, but that such measure included the amount of petitioner's allowable compensation in addition to the $3,000 payment. The record does not disclose the amount of compensation claimed by petitioner or the amount allowable therefor, but whatever the amount thereof may be, the conclusion is inescapable that the claim for and payment of damages resulted entirely from the alleged mismanagement of the trust estates and did not grow out of petitioner's claim for compensation as trustee.

The case of *Bingham's Trust* is also cited and relied upon as supporting the conclusion in the majority opinion. In my view, that case has only a negative relevancy, if any, to the question involved here, in that it serves only to point the distinction between the trust estate as a taxable entity and the trustee thereof as an individual taxpayer in the application of the provisions of section 23 (a) (2). Furthermore, the language quoted by the majority from the *Bingham* case relates to that part of subsection (a) (2) which has to do with expenses of managing property held for the production of income, which part is not here involved. We are here concerned with that part of (a) (2) which relates to expenses of producing or collecting income. That case does not aid the holding for the petitioner here.

As in the *Clark* case, I think it obvious that the amount here sought to be deducted was not an expense incurred or paid for the production or collection of income. I am, therefore, unable to concur with the majority opinion.

VAN FOSSAN and ARNOLD, *JJ.*, agree with this dissent.