VALENTINE E. MACY, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

J. NOEL MACY AND ELENA KOHLER MACY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 27152, 27153. Promulgated December 10, 1952.

William H. Hall, Esq., for the petitioners.
Rigmor O. Carlsen, Esq., for the respondent.

416

426

## OPINION.

TURNER, *Judge:* The primary contention of the petitioners is that they were engaged in the business of acting as executors and trustees and that the amounts paid by them in order to settle the contest of their accountings constituted ordinary and necessary expenses incurred in carrying on business or constituted losses incurred in business within the purview of section 23 (a) (1) (A) and (e) (1) of the Internal Revenue Code.[2] The respondent's position is that the petitioners' activities as executors and trustees were not the carrying on of a trade or business and, assuming they were, the controverted amounts were not ordinary and necessary expenses incurred in carrying on such business.

In support of their contention, the petitioners point to the various trusts of which they acted as trustees in addition to being executors of the decedent's estate, and rely on the holding in *John Abbott*, 38 B. T. A. 1290, that one who regularly engages in the business of serving for pay as trustee and executor and incurs and pays a liability growing out of the conduct of such business is entitled to deduct as a business expense the amount so paid. The petitioners further contend that an administrator's activities in handling a single estate may be of sufficient scope and duration to constitute his being engaged in a trade or business as administrator, and urge that aside from their trusteeships their activities as executors in administering the dece-

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
(a) EXPENSES.—
    (1) TRADE OR BUSINESS EXPENSES.—
        (A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *
            *       *       *       *       *       *       *
    (2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.
            *       *       *       *       *       *       *
(e) LOSSES BY INDIVIDUALS.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—
    (1) if incurred in trade or business; or
    (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *

dent's estate were such as to constitute those activities the "carrying on" of a trade or business within the meaning of section 23 (a) (1) (A).

For a number of years prior to his death the decedent had been engaged in the promotion and development of various business enterprises, including real estate. Among the principal assets of his estate were his controlling stock holdings in Hudson Company, Hathaway Holding Corporation, and Westchester Publishers. He had organized Hudson Company in which to consolidate his interests in a number of enterprises and to facilitate their operation, management, and further financing. It was through this corporation that he supervised, directed, and financed such enterprises. Hathaway Holding Corporation held the stocks of operating corporations which the decedent had organized to deal in real estate and related matters in which he was interested, and through Hathaway he supervised and directed these enterprises. Westchester Publishers held the stocks of corporations engaged in the publication of newspapers and related business, and through Westchester Publishers the decedent supervised and directed such enterprises. Much of the financing of the real estate and newspaper enterprises was made through Hudson Company. For many years prior to the decedent's death, Carleton Macy, and for a number of years prior thereto the petitioners, had been closely associated with the decedent in handling the affairs of the various enterprises in which he was interested. Following the decedent's death the part that the decedent had had in the supervision, direction and financing of the various enterprises passed to the petitioners and Carleton as executors. What theretofore had been the ultimate and final responsibility of the decedent with respect to his interests in the various enterprises became that of the executors.

Referring to the various objections made to the contested accountings, the respondent makes considerable argument to the effect that although the petitioners were extremely busy throughout the period of the administration of the decedent's estate, they were not carrying on business as executors or trustees, but as individuals, outside of their authorized fiduciary duties. Prior to the decedent's death Valentine and J. Noel had become stockholders in Hudson Company and Hathaway Holding Corporation and J. Noel had become a stockholder in Westchester Publishers. Both had become directors in Hudson. Valentine had become an officer in Hudson and an officer and director of two of the real estate companies. J. Noel had become president of Westchester Publishers. Concededly, because of their stock ownership in the foregoing corporations, the petitioners had a direct personal interest in them and their affairs. Until the death of the decedent, the controlling stock interest in the corporations was in the

decedent. Following his death that control passed to the executors, who were in control of his entire estate. And it was as executors that the petitioners operated, managed, and directed the various corporations, businesses, and enterprises in which the decedent's estate was interested. Such being the facts, it is of no consequence whether similar or further activities, based on their direct personal interests in such corporations, businesses, and enterprises, might or might not constitute the conduct of business within the meaning of section 23 (a)(1)(A).

In further support of his position that the petitioners were not engaged in business as executors, the respondent cites and relies on the decisions in *City Bank Farmers Trust Co.* v *Helvering*, 313 U. S. 121, and *United States* v. *Pyne*, 313 U. S. 127. These cases stemmed from and were decided on the authority of *Higgins* v. *Commissioner*, 312 U. S. 212, wherein it was held that one who merely kept records and collected interest and dividends from his securities through managerial attention for his investments and did not participate directly or indirectly in the management of the corporations in which he held stock or bonds, was not engaged in carrying on business for the purpose of the allowance of deduction for expenditures incurred in such activities. In the *City Bank Farmers Trust Co.* case, the Supreme Court concluded that the activities of the taxpayer-trustee were not materially different from those of the taxpayer in the *Higgins* case, and accordingly held that the taxpayer-trustee was not engaged in carrying on business. In the *Pyne* case, a decedent prior to his death was a financier and investor, and employed an office manager and an average of six clerks in the conduct of his affairs. The operations of his estate continued substantially the same after his death as before, with the executors continuing to conserve the assets, as the decedent had done during his lifetime, and protecting the income. In the administration of the estate the executors incurred attorney's fees for legal and economic advice, which fees they sought to deduct as ordinary and necessary business expenses, predicating their claim therefor on the contention that the tremendous size of the corpus of the estate (approximately $35,000,000) and the proper administration thereof constituted the operation of a business. The Supreme Court concluded that the decision in the *Higgins* case was applicable and that the executors were not engaged in carrying on business. In reaching that conclusion, the Court stated that the activities of executors in conserving an estate and protecting its income are the traditional duty of executors, that in the absence of evidence showing activities coming within the general acceptance of the concept of carrying on a trade or business, it cannot be said as a matter of law that an executor comes into this category merely because he conserves the estate by marshaling

and gathering the assets as a mere conduit for ultimate distribution, and that the determination of what constitutes carrying on business does not depend on the size of the estate or the number of people whose services are required to conserve it. However, the Court further stated that while executors who actively engage in trade and business are the exception, and not the rule, rather obviously there could be clear cases where executors carry on business by continuing to operate a store, a factory, or some other well known, well marked type of business activity.

The situation here is materially different from those presented in the foregoing cases, relied on by respondent. Here the activities of the executors went beyond the mere collection of the income of the estate and conserving its assets. Upon the death of the decedent, the executors succeeded to the decedent's direction and control of a group of operating enterprises represented by Hudson Company, Hathaway Holding Corporation, Westchester Publishers, and their subsidiary companies, and as a result the executors became the directing heads of such enterprises and responsible for their operation. While each of the executors devoted the principal part of his fiduciary activities to a different group of the enterprises, they conferred regularly with each other and the three together determined the policies to be pursued with respect to each group. Their activities with respect to the various enterprises engaged a considerable amount of their time and attention over the period from their appointment on April 2, 1930, to the date of their accountings, February 17, 1942, first as executors and then as trustees of the "residuary trusts" following distributions to the trusts in 1937 and 1938 of the Hudson Company, Hathaway Holding Corporation and Westchester Publishers stocks. The petitioners here were more than mere casual executors, as was found to be the case in *Estate of Hyman Y. Josephs*, 12 T. C. 1069. In our opinion, the scope and duration of their activities were such as to constitute those activities the carrying on of a trade or business and within the exception to the general rule, as enunciated by the Supreme Court in the *Pyne* case. Cf. *John Preston Rice*, 44 B. T. A. 749; *Wallace's Estate v. Commissioner*, 101 F. 2d 604. Accordingly, we have found as a fact that the petitioners, as executors, were engaged in the carrying on of a trade or business.

A similar conclusion follows with respect to the activities of the petitioners as trustees of the residuary trusts. Beginning in 1936, the assets remaining in the residuary estate of the decedent were transferred to the three residuary trusts, and, as those assets were so transferred, the business activities which had been carried on by the petitioners as executors of the Macy estate were thereafter conducted by them as trustees of the three trusts. There was, in fact, no break

in those functions and activities; prior to the transfers they were conducted by them as executors, and after the transfers, as trustees. The evidence, in our opinion, is clear on the point, and we have so found as a fact.

It is next urged by the respondent that in any event the payments made by the petitioners, and here in question, were not such as to constitute them "ordinary and necessary" expenses in carrying on business within the meaning of section 23 (a) (1) (A). As authority for this proposition, he cites *Commissioner* v. *Heide*, 165 F. 2d 699, reversing 8 T. C. 314, relying particularly on the following language from the court's opinion:

\* \* \* Perhaps, when a man goes into the business of being a trustee, the occasional restoration of funds under his care made necessary because of sporadic neglect, may be "necessary expenses" incurred in "carrying on" the business. That they are "incurred" in carrying it on is true enough; and, although it seems strange to think of them as "necessary," conceivably that may be permissible; such a business by hypothesis involves a number of separate trusts and some mistakes are probably inevitable. In the case at bar however, it is not enough that the expenses be incurred in carrying on the trust; it must be necessary to "the production of income," or possibly to the "management, conservation, or maintenance" of the fund, and it seems to us impossible to regard it as such. True, restoration does become necessary, once the fund has been depleted; but obviously that cannot be the test, else it would cover deliberate invasions, which nobody maintains. The depletion itself must be necessary to the production of the income, or the management of the trust, and that it cannot be, unless we hold that, when one who engages to become a trustee and fails in his duty, his failure is "necessary" to the discharge of his office; surely, it takes hardihood to suppose that, when Congress chose that word, it meant to subsidize delinquent trustees in this way. Delinquent they are; for, although they undertake no more than reasonable care in the circumstances, by hypothesis they have failed even in that. The purpose of the provision, which applies to all sorts of income, is apparent; without it a person receiving income would be charged with his gross receipts, and would not be allowed to set off the expenses without which those receipts would not come to hand at all. That was an injustice comparable with charging the "amount realized" upon a capital gain and refusing to credit the "basis." But the expenses so deducted should not be within the power of the taxpayer to avoid; they should result from conditions which stand in the path of his "producing" the income at all, they should not be such as he interposes himself, as little so, when his attention has flagged as when he has been deliberately unfaithful to his trust.

Recognizing, however, that the deduction claimed and dealt with in the *Heide* case was a deduction under section 23 (a) (2), not section 23 (a) (1), the respondent cites *Bingham's Trust* v. *Commissioner*, 325 U. S. 365, for the proposition that the two statutory provisions are "coextensive," except for the words "added to" section 23 (a) (2), and upon that basis concludes that what was said in the *Heide* case "with respect to a trustee's duties and the meaning of 'necessary expenses' is equally applicable to section 23 (a) (1)," here under consideration.

While it may seem "strange," as suggested in the *Heide* opinion, to conclude that expenditures made by an individual in the course of his activities as an executor or trustee may be regarded as "necessary" within the meaning of section 23 (a) (1), where such activities constituted the carrying on of a trade or business, while the same or similar expenditures are not to be regarded as "necessary" within the meaning of section 23 (a) (2), to the "production of income," or to the "management, conservation, or maintenance" of the fund, the court itself limited the views expressed to the applicability of the latter section to the case before it and specifically refrained from expressing disagreement with *John Abbott, supra,* in which it was found and held that the activities of the taxpayer constituted the carrying on of business within the meaning of section 23 (a) (1). Furthermore, to say that an expenditure may not be regarded as "necessary" within the meaning of section 23 (a) (1), even though made by a taxpayer in the conduct of the trade or business, unless it was an expenditure not "within the power of the taxpayer to avoid," must have resulted from conditions which stood "in the path of his 'producing' the income at all," and are not such conditions "as he interposes himself," could, in our opinion, result in an undue restriction of the deductibility of such expenditures contrary to the pronouncements in numerous decided cases and rulings.

In *Kornhauser* v. *United States,* 276 U. S. 145, the claim was for the deduction of attorney's fees paid in the defense of a suit wherein it was charged that the taxpayer had wrongfully failed to account to a former partner for attorney's fees received during the existence of the copartnership. It was held that the fees paid in the defense of the suit were ordinary and necessary business expenses, and therefore deductible, even though it does not appear either in the opinion of the Court of Claims, which thought that the expenditure was personal and not deductible, or in the opinion of the Supreme Court, that the claim of the former partner was, or was not, well founded or the expenditure one not "within the power of the taxpayer to avoid." In S. M. 4078, V-1 C. B. 226 (1926), mentioned with approval in *Kornhauser* v. *United States, supra,* a deduction described as one "which would be allowed without question" was that of "expenses incurred by a merchant in defending an action for personal injuries caused by one of his delivery automobiles." Such actions are normally based on a charge of negligence, the very essence of which is that by the exercise of reasonable care the injuries could have been avoided.

In *Henry F. Cochrane,* 23 B. T. A. 202, it was held that an attorney was entitled to deduct as an ordinary and necessary expense incurred in carrying on a trade or business, an amount paid by him to a client in reimbursement of a loss sustained by the client as a result of the

negligence of the attorney in preparing an advertisement of property of the client which the client had employed him to sell. In *Isaac P. Keeler*, 23 B. T. A. 467, the taxpayer was a member of a partnership which transacted business with a corporation in which he owned a small amount of stock. The taxpayer and certain officers of the corporation organized a new corporation, in which the taxpayer became a director and to which the partnership transferred its business. Suit was brought by the first corporation against the taxpayer and other officers for conspiring to injure it and build up a competing business. It was held that the attorney's fees paid by the taxpayer in defending the suit were ordinary and necessary business expenses. For a comparable case, in which attorney's fees were paid by a taxpayer who was an officer and director of a corporation in the defense of charges of breach of fiduciary duties, and such fees were held to be ordinary and necessary business expenses, see *Hochschild* v. *Commissioner*, 161 F. 2d 817. In *Helvering* v. *Hampton*, 79 F. 2d 358, it was held that an amount paid by a taxpayer, engaged in buying, selling, and leasing real estate, in settlement of a judgment against him and in favor of a lessee for fraud by the taxpayer in negotiating the lease, and expenses paid by the taxpayer in defending the suit constituted ordinary and necessary expenses in carrying on business. In so holding, the court took the view that private wrongdoing in the course of business is not extraordinary within the meaning of the statutory provisions allowing deductions for "ordinary and necessary expenses" and concluded that even "if unethical conduct in business were extraordinary, restoration therefor is ordinarily expected to be made from the person in the course of whose business the wrong was committed." In *Commissioner* v. *Heininger*, 320 U. S. 467, the Supreme Court cited and predicated a portion of its reasoning on the holdings in S. M. 4078, *Isaac P. Keeler, supra*, and *Helvering* v. *Hampton, supra*.

In *John Abbott, supra*, the taxpayer, who was regularly engaged in the business of acting as trustee and as executor, and his co-trustees loaned on various parcels of real estate sums of money in excess of the maximum amounts permitted by the trust instrument under which they were acting. Their action in this regard was made the basis of objections by the trust beneficiaries to an accounting of the trustees and of a charge of breaches of trust. A settlement agreement between the trustees and the beneficiaries was entered into, whereby the trustees paid $17,500, of which the taxpayer paid $10,000, and the accounting was allowed. On authority of *Kornhauser* v. *United States, supra*, the amount paid by the taxpayer was held to be an ordinary and necessary business expense and deductible by him.

On the evidence in the instant case, we have concluded and found as a fact that the activities of the petitioners as executors and trustees

constituted the carrying on of a business. The payments here sought to be deducted were incurred by them in the conduct of such business. The referee certified to the Surrogate Court that the contestants of the accountings of the petitioners, as such executors, and trustees, did not claim or show that there was bad faith, improper motive, or dishonesty on the part of the petitioners and Carleton Macy. They were not in any sense payments to cover willful or deliberate invasions of the trust corpus. In harmony and in keeping with the pronouncements in the cases discussed above, we conclude and hold that the payments constituted ordinary and necessary expenses incurred by the petitioners within the meaning of section 23 (a) (1) (A).

Reviewed by the Court.

*Decisions will be entered under Rule 50.*