SHELDON SOLOMON AND ARLENE S. SOLOMON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Solomon v. Commissioner
Docket No. 7825-72.
United States Tax Court
T.C. Memo 1974-127; 1974 Tax Ct. Memo LEXIS 193; 33 T.C.M. (CCH) 588; T.C.M. (RIA) 74127; May 14, 1974, Filed. Sheldon Solomon, pro se. Alan R. Herson, for the respondent. *194 DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency in petitioners' income tax for the year 1969 in the amount of $1,248.74. The issue for decision is whether petitioner is entitled to deduct as an ordinary and necessary business expense the amount of $3,779 paid in 1967 in settlement of, and for legal fees incurred in connection with, a lawsuit brought against petitioner, Sheldon Solomon, for misappropriation of funds held in trust. Petitioner did not put in issue certain other adjustments determined in the notice of deficiency. FINDINGS OF FACT Petitioners were husband and wife residing in Orange, Calif., at the time the petition herein was filed. They filed a joint U.S. Individual Income Tax Return for the year 1969 on the cash basis of accounting with the Western Service Center at Ogden, Utah. Sheldon Solomon will hereinafter be referred to as petitioner. Petitioner is a certified public accountant licensed to practice in California since 1960. His practice was conducted under the name "Solomon & Edwards" in 1969. Petitioner has served as treasurer of several religious and community organizations, as executor *195 of an estate, as trustee of a medical group pension plan; and as director of several corporations. The record does not reveal whether petitioner received compensation for any of these services. Petitioner's father and mother had been estranged, with his father living in New Jersey and his mother living in California. In August of 1966 petitioner's father, believing he was afflicted with terminal cancer, moved to California where he resumed a relationship with petitioner's mother. In September of 1966 petitioner's father was admitted to a hospital in Anaheim, Calif. where he remained for 6 weeks to 2 months. Sometime during this period petitioner's father gave petitioner approximately $10,860 to hold for the benefit of his father and for his mother if anything happened to his father. Petitioner spent $2,137.39 of these funds to make payments on an automobile for his mother and advances of cash to her for personal living expenses. When petitioner's father recovered he demanded return of the money and petitioner returned all of it except the $2,137.39 to his father. Later in 1967 petitioner's father gave petitioner the sum of $5,327.54 which petitioner later returned to his *196 father. Claiming that petitioner had not been authorized to spend any of the money his father had given him to keep, petitioner's father brought suit against petitioner to recover the money spent, and obtained a judgment against petitioner for $2,429.97, plus costs. Petitioner employed an attorney to appeal the case but the judgment was affirmed. Including the attorney's fees, costs, and the judgment, petitioner paid out a total of $3,779 in connection with this proceeding in 1969. On their 1969 income tax return petitioners claimed a deduction for $3,779 for "lawsuit settlement." In the notice of deficiency which is the basis for this proceeding respondent disallowed the deduction for the reason that the amount paid out had not been incurred in carrying on a trade or business. OPINION Petitioner contends that the amounts he paid out as a result of his father's lawsuit against him were ordinary and necessary expenses of his business. While it is not too clear what petitioner's position is he seems to argue that many accountants are called upon to be trustees or fiduciaries in the regular course of their business, that he had done so on several occasions, and that these *197 expenses were incurred in the operation of his business of being a trustee, similar to expenses incurred in defending a malpractice suit. Petitioner also appears to claim that it was necessary for him to defend the lawsuit to protect his reputation as an accountant. First, we note that petitioner paid these expenses personally; they were not claimed as an expense of his accounting business. There is no evidence that these expenditures were in any way related to petitioner's accounting business, nor that his reputation as an accountant was in any way jeopardized by the lawsuit. Petitioner offered evidence in the form of liability insurance flyers to support his argument that accountants are often called upon to act in fiduciary capacities, but the mere fact that petitioner could subsequently have obtained insurance to cover any liability he might incur by reason of a wrongful act while acting in a fiduciary capacity does not prove that this particular liability was incurred in connection with his accounting business. Second, we do not have sufficient evidence to show that petitioner was in the business of being a trustee. We have only petitioner's own testimony that he had *198 been treasurer of several religious and community organizations, trustee of one pension plan, executor of one estate, and director of several corporations. There is no evidence that petitioner received any consideration for these activities; in fact we surmise from the evidence that most of these activities were engaged in by petitioner as contributions to the community. In any event we do not have evidence enough to convince us that petitioner's fiduciary activities constituted a business. Furthermore, even if it could be said that petitioner was engaged in the business of being a trustee, the evidence does not show that holding this money for his father was a part of that business. This was purely a personal matter between petitioner and his father. There was apparently no written agreement establishing a trust and not even any clear oral understanding between petitioner and his father concerning what petitioner was supposed to do or authorized to do with the funds. We can sympathize with petitioner for being called on to account for moneys he spent for purposes he probably thought were authorized and for which he apparently received no direct benefit himself - but this does *199 not make the expenditures deductible as business expenses. In Reimold v. Commissioner, 144 F.2d 390 (C.A. 3, 1944), the taxpayer, as executor of his father's estate, invested estate funds in stocks which were not legal investments for executors and when the stock was sold at a loss he reimbursed the estate by cancellation of indebtedness to him. He claimed the loss as a deduction of a business expense. In denying the deduction the Court pointed out that petitioner was not in the business of handling estates, but even if so, the loss incurred would not be considered part of the trade or business of an executor and he would be individually responsible, citing Stuart v. Commissioner, 84 F.2d 368 (C.A. 1, 1936). See also Commissioner v. Heide, 165 F.2d 699 (C.A. 2, 1948), reversing 8 T.C. 314 (1947); Commissioner v. Josephs, 168 F.2d 233 (C.A. 8, 1948), reversing 8 T.C. 583 (1947); and Carl F. Fayen, 34 T.C. 630 (1960), in which this Court followed the reversals in the Heide and Josephs cases. Those cases held that payments in settlement of, and litigation expenses incurred in connection *200 with, surcharge suits against trustees for mismanagement of trusts were not deductible either under section 23(a) (1), I.R.C. 1939, the predecessor of section 162(a), I.R.C. 1954 (ordinary and necessary business expenses), or section 23(a) (2), I.R.C. 1939, the predecessor of section 212, I.R.C. 1954 (expenses for production of income). We conclude that petitioners are not entitled to deduct any part of the $3,779 claimed. Decision will be entered for the respondent.