STEPHEN H. TALLMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86550. Promulgated June 15, 1938.

*William Cogger, Esq.*, for the petitioner.
*D. D. Smith, Esq.*, for the respondent.

OPINION.

HARRON: It is not disputed that petitioner sustained a loss of $15,100.05 in compromise of a threatened suit for $40,000. The only question presented for our decision is whether the claimed loss is an allowable deduction under the Revenue Act of 1934.[1]

The respondent disallowed the deduction on his determination that the loss was not incurred in trade or business or in a transaction entered into for profit. From the evidence before us, we think petitioner did not sustain the loss in connection with a business or in a transaction entered into for profit. Petitioner was employed by a bank at a salary of $11,000 per year and only occasionally acted for clients of the bank, under a power of attorney, and did not receive fees for such purposes. On only one occasion, in the administration of an estate of a client of the bank, did petitioner receive a fee. It can hardly be said, under the facts before us, that petitioner regularly engaged in the business of acting as a fiduciary for his own clients. It has been held that a person can be engaged in more than one business, but, where transactions are periodic or isolated, they do not suffice to constitute a business, regularly carried on by the taxpayer for the purpose of livelihood or profit within the meaning of the term used in section 23 (e) of the Revenue Act of 1934. *Willoughby H. Stuart, Jr.*, 32 B. T. A. 574; affd., 84 Fed. (2d) 368, and authorities cited therein. The matter involved in the issue before us was an isolated one which extended over several years. The matter of Laura Brown was of concern to petitioner's wife and her sisters. The two women relatives of Laura Brown found their responsibility difficult to carry and they prevailed upon petitioner to take over Laura Brown's financial affairs. The problem continued for longer than was expected. It was necessary to invest and reinvest a fund. But, in spite of the work required of investing, writing checks, and keeping accounts, petitioner never asked for or received a fee. There were practical reasons for petitioner's undertaking such efforts for an invalid relative of his wife under a power of attorney. Laura Brown's securities were held by banks in Buffalo and Cleveland. No doubt some formal step, such as the execution of a power of attorney by Laura Brown, was necessary to satisfy the first bank concerned in Buffalo when it turned over securities to petitioner. The fact that

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(e) LOSSES BY INDIVIDUALS.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

(1) if incurred in trade or business; or

(2) if incurred in any transaction entered into for profit, though not connected with the trade or business \* \* \*.

petitioner acted under a power of attorney does not contribute to characterize his activities in the matter as a business activity. Viewing the entire matter from a reasonable standpoint, petitioner's activities were commendable and charitable, but were such as a business man in a family would undertake for the less experienced women relatives. We recognize that petitioner's regular business as a banker made him competent to look after the management of his wife's relative's finances, but we must draw a line between endeavors carried on in his regular business and an isolated matter carried on to aid a relative, even though the same skill and knowledge is used in both endeavors. Laura Brown was a client of the bank because of the loan account. But petitioner accepted the power of attorney entirely apart from his employment and duties at the bank and before Laura Brown became the bank's client. He accepted the power of attorney at the behest of Laura Brown's sisters, to assist them in a duty they found burdensome. The matter appears to have been chiefly a "family matter." Viewing the Brown matter apart from the interest the bank later had, it was not such a matter as we can hold to constitute the carrying on of a "business" by petitioner within the meaning of that phrase in the revenue act.

Nor do we believe it can be concluded that petitioner looked after the Brown matter with the intention of making a profit or deriving gain. Petitioner states that he expected to receive compensation for services after Laura Brown's death. This was at most a hope. Over a period of ten years no arrangements were made for any compensation for the services at the end and apparently the matter was not discussed. Intention of receiving gain or profit is important, as was noted by the court in *Commissioner* v. *Field*, 67 Fed. (2d) 876. We are unable to find from the facts here that petitioner had any *earnest* intention of realizing profit from his efforts in the Brown matter. Cf. *Burrows McNeir*, 30 B. T. A. 418.

We recognize that a payment to settle a controversy or claim may be held to be a deductible loss, if, however, the controversy arises out of matters related to the conduct of a business or a transaction entered into for profit. Cf. *North American Investment Co.*, 24 B. T. A. 419. But here we conclude that the payment petitioner made in 1934, in settlement of the claim against him, constituted a personal loss rather than a loss deductible under section 23 (e), because the matter which gave rise to the controversy or claim was not related to a business regularly carried on by petitioner, in addition to his bank employment, and was not in itself a transaction entered into for profit.

*Decision will be entered for the respondent.*