TRUST U/W OF MARY LILY (FLAGLER) BINGHAM, MESSRS. WILLIAM R. KENAN, JR., AND LAWRENCE C. HAINES, TRUSTEES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109384.   Promulgated October 8, 1943.

*A. Roberts MacMannis, C. P. A.*, for the petitioners.
*Thos. H. Lewis, Jr., Esq.*, for the respondent.

854

OPINION.

TYSON, *Judge*:   The parties have stipulated that $184,874.62 of the expenses in question were ordinary and necessary expenses paid during the taxable year for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income, and respondent, on brief, concedes that such amount is deductible.   We accordingly hold that those expenses are deductible from petitioners' gross income.

The question is then presented as to whether the other expenses of $25,867.31 are also deductible from petitioners' gross income.

Petitioners' first contention is that under item ninth of the will they, as trustees, were carrying on the business of the maintenance, administration, and development of the properties of the hotel, railway, and subsidiary companies, stocks and bonds of which companies were owned by them, the amount thereof and their proportions of the totals outstanding not being shown; that the expenses were incurred and paid in that business; and that those expenses are consequently deductible under section 23 (a) (1) of the Internal Revenue Code or that subsection as carried forward into section 121 of the Revenue Act of 1942.   Petitioners make no argument that they were carrying on a business of any other character.

There is nothing in the record showing in what activities, if any

petitioners were engaged with reference to the maintenance, administration, or development of the properties of the hotel, railway, and subsidiary companies, and there is also nothing in the record to show that the petitioners participated, directly or indirectly, in the management of any of those companies or their properties. We are therefore unable to say that the trustees were engaged in the carrying on of the business of the maintenance, administration, or development of such properties, as contended by petitioners. In reaching this conclusion we have not overlooked that part of the stipulation of facts stating that the expenses were paid by the trustees "pursuant to the powers conferred on them by Item Ninth * * * of said will." The trustees were empowered by item ninth to sell, invest, and reinvest, and to use the income and increment, and to mortgage, pledge, and exchange properties, for the purpose of maintaining, administering, or developing the principal properties; but the amounts here in question, as shown by our findings and as itemized in the stipulation, clearly were not expended in the exercise of any of these powers. In this situation we are not bound by the conclusion contained in the part of the stipulation quoted above and that portion must be disregarded in determining whether the trustees were engaged in the carrying on of the business of the maintenance, administration, or development of the principal properties of the hotel, railway, and subsidiary companies, as contended by the petitioners. *Ernst Kern Co.*, 1 T. C. 249, 265; *William Ernest Seatree*, 25 B. T. A. 396; affd., 72 Fed. (2d) 67; *T. K. Harris Co.*, 38 B. T. A. 383; affd., 112 Fed. (2d) 76.

Assuming however that the trustees were engaged in carrying on the business of the maintenance, administration, and development of the properties of the hotel, railway, and subsidiary companies, it is clear that none of the $25,867.31 expenses was incurred or paid for the purpose of the carrying on of that business. All of it was incurred and paid in connection with the payment of legacies and distributions from the estate by the trustees to the benefiiciaries entitled thereto and the expiration of the trust, as is shown in our findings and the itemization of those expenses in the stipulation of facts.

We are of the opinion, and so hold, that the expenses of $25,867.31 were not expenses incurred and paid in carrying on a trade or business within the provision of section 23 (a) (1) of the Internal Revenue Code or of that subsection as carried forward into section 121 of the Revenue Act of 1942, as contended by petitioners.

Since the determination of the deficiency herein Congress has enacted section 121 of the Revenue Act of 1942, retroactively amending

section 23 (a) of the Internal Revenue Code,[1] and that section as amended applies to the taxable year here involved. Therefore, there remains the question of whether the expenses we are considering are deductible under that amendment. Section 121, *supra*, is applicable to the income of a trust such as the one here involved. (Secs. 161 and 162, Internal Revenue Code.)

Petitioners contend alternatively that, if the expenses were not incurred and paid in the carrying on of a business, they were paid and incurred as a "nontrade or nonbusiness expense" within that provision of section 23 (a) (2) of the Internal Revenue Code as added by section 121 (a) of the Revenue Act of 1942, which allows deductions for expenses "paid or incurred  *  *  *  for the management, conservation or maintenance of property held for the production of income." They concede, on brief, that the expenses involved had no connection with the "production or collection of income" as those words are used in section 23 (a) (2). There is no dispute over whether the claimed deductions were ordinary and necessary expenses.

Respondent, on brief, concedes that the trust property was "held for the production of income" as those words are used in section 23 (a) (2), *supra*, but contends that nevertheless the expenses involved were not incurred or paid for managing, conserving, or maintaining the property so held, because, he argues, the expenses were proximately, caused, not by such holding of the property, but by its dsitribution, and states more particularly that the management of the property of a trust does not embrace any act pertaining to the distribution or "settling up" of the trust estate.

The litigation in 40 B. T. A. 824, and 114 Fed. (2d) 217, arose in connection with property held for the production of income which the petitioners were managing, and, while the expenses of that litigation were paid as a result of the payment by petitioners as trustees of a bequest of $5,000,000 to Louise Clisby Wise, the sole purpose and object of the litigation and the proximate cause of the expendi-

---

[1] SEC. 121. NON-TRADE OR NON-BUSINESS DEDUCTIONS.

(a) DEDUCTION FOR EXPENSES.—Section 23 (a) (relating to deduction for expenses) is amended to read as follows:

"(a) EXPENSES.—

"(1) TRADE OR BUSINESS EXPENSES.—

"(A) IN GENERAL.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business: and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

\*        \*        \*        \*        \*        \*        \*

"(2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of properey held for the production of income."

\*        \*        \*        \*        \*        \*        \*

ture were to relieve the estate from the payment of the deficiency in income tax determined by the Commissioner, which was the subject matter of the litigation. The effort of petitioners in seeking, through this litigation, to give such relief to the estate was, in our opinion, obviously a factor in the conservation, management, and maintenance of the property of that estate, concededly held for the production of income, since in resisting the imposition of the tax the trustees were performing the required duty of protecting and defending the trust property in their hands against any claim or lien for the tax. Even if, on the facts presented, it could fairly be said that the distribution of the $5,000,000 bequest was the proximate cause of the expenses paid in connection with the litigation, those expenses would then be essentially of the same character as those other expenses which are immediately hereinafter considered and would be deductible as expenses paid for the "management" of the property for the same reasons.

We hold that the expenses of the litigation are deductible from petitioners' gross income under section 23 (a) (2) of the Internal Revenue Code as added by section 121 of the Revenue Act of 1942.

As to the balance of the controverted expenses, amounting to $9,427.35, we are of the opinion that they are also deductible from the gross income of petitioners under the same statute. The subject matter with regard to which those expenses were incurred and paid involved problems arising out of the payment of a bequest to the University of North Carolina, the expiration of the trust, and distribution of its assets to the legatees, and such payment and distribution were made by the trustees as directed by the will and as a part of their duties in managing the trust property.

That those expenses incidental and necessary to the payment of the University of North Carolina legacy and the "settling up" of the trust estate through distribution of its property held here by the trustees for the production of income are deductible under section 23 (a) (2) of the Internal Revenue Code as added by section 121 (a) of the Revenue Act of 1942 is, in our opinion, clear; since one, if not the most, vital duty imposed upon those trustees was to make proper distribution of such property, and in making it they were performing one of the principal functions of the management of such property, since until that property reached the hands of the legatees and distributees the trustees were in complete control of it, and thus its management. "Management" is the act of managing; the manner of treating, directing, carrying on, or using, for a purpose; conduct; administration; guidance; control. (Webster's New Int. Dict.) The expenses were incurred and paid prior to the distribution and

860

while the property still remained in the hands and in the complete control of the trustees.

This is not a case where the expenses in question were paid in the course of the administration of the estate and where the expenses would be deductible from the gross estate for estate tax purposes rather than from gross income. In the first place the trust here was a long term trust to endure for 21 years from September 23, 1916, and that the expenses in question were not incurred or paid in the course of the administration of the estate is further demonstrated by the facts that the first payment of a legacy (the one to Louise Clisby Wise) with respect to which the expenses of the suit above mentioned were incurred and paid was in 1935; that the payment of the other legacy, to the University of North Carolina, with respect to which other of these expenses were incurred and paid, was made at or about the time of the expiration of the trust; and that the balance of the expenses of $25,867.31 was incurred and paid in connection with and as a result of the expiration of the trust and delivery of its assets to the legatees.

We conclude that the expenses paid in connection with the payment of the legacy to the University of North Carolina, the expiration of the trust, and the distribution of the assets of the trust estate were "for the management, * * * of property held for the production of income" and we hold that the amount so expended is deductible from gross income of petitioners within the purview of section 23 (a) (2) of the Internal Revenue Code as added by section 121 (a) of the Revenue Act of 1942.

Reviewed by the Court.

*Decisions will be entered for the petitioners.*

---

KERN, *J.*, concurring: I concur in the result reached by the majority opinion only because I conceive that the management of the property of the estate embraced the proper disposition of it pursuant to the will of the decedent, and that the expenses of litigation arising out of the disposition of the property of the estate are consequently "ordinary and necessary expenses paid * * * for the management * * * of property held for the production of income," and deductible under section 121, quoted in the majority opinion. The mere fact that the purpose of the expenditure was to relieve the estate from the payment of the deficiency in income tax and to protect the property of the estate from any tax lien, does not, in my opinion, characterize the expenditure as one paid or incurred "for the management, conservation, or maintenance of property held for the production of income." See *John W. Willmott*, 2 T. C. 321, 326, 327.

SMITH, *J.*, agrees with the above.

Disney, *J.*, dissenting: The majority opinion first holds deductible, only under section 121 of the Revenue Act of 1942, the expenses of contesting a deficiency which was determined by the Commissioner on the theory that taxable gain was realized through the payment of a legacy in securities which had appreciated in value. The reason given for such allowance is that the effort of the petitioner through the litigation to give relief to the estate was a factor in the conservation, management, and maintenance of the property of the estate, since in resisting the imposition of the tax the trustees were performing their duty in defending the trust property against the claim for tax. I can not agree with that conclusion. The mere fact that the payment of the deficiency would consume resources of the estate is no sufficient answer for allowing the deduction, for on such a theory any expense of any litigation, incurred by a trust or an individual, would be deductible merely because the litigation might have terminated in a judgment collectible out of the property or estate of the litigant, and without regard to whether the litigation concerned property held for the production of income. For instance, on the same theory, expenses of defending litigation for personal injuries caused by negligence would be deductible, though having no connection with properties held for the production of income. Regulations 103, as amended in the light of section 142 of the Revenue Act of 1942, in my opinion properly provide that expenditures incurred for the purpose of resisting a proposed additional assessment of taxes are not deductible, unless the taxes are on property held for the production of income. The tax involved in the deficiency which was litigated was not a tax upon the property held by the estate, but upon gain realized in the act of paying a legacy. Clearly, I think, paying the legacy can not be called conservation, management, or maintenance of the property of the estate, within the terms of the statute, for the property of the estate was being disposed of instead of being maintained, managed, or conserved. In my view, the words were used in their usual significance, intended to allow the ordinary and necessary expense requisite to the proper preservation or use of the property involved, such, for example, as repairs and expenses of supervision; but I do not believe that the deduction may properly be allowed merely because, to use the words of the majority opinion, "in resisting the imposition of the tax the trustees were performing the required duty of protecting and defending the trust property in their hands against any claim or lien for the tax." This is not a question of the duty of the trustees under the trust instrument, but one as to whether ordinary and necessary expenses were paid "for the management, conservation, or maintenance of property" held for the production of income, and I can not subscribe to the idea that to litigate any question which

might result in a judgment collectible out of that property is to manage, conserve, or maintain it, within the intendment of the statute. I therefore think that the expense of litigation over the deficiency does not come within the statute.

Nor can I agree that the expenses for services in connection with the payment of the legacy to the University. of North Carolina and "other problems resulting from the expiration of the trust and delivery of its assets to the legatees," as the majority opinion expresses the facts, are deductible under the statute. The majority opinion allows these also, on the theory that in distributing the property under the trust instruments the trustees were managing it. Apparently, conservation or maintenance of the property is not relied upon in the majority view. Again, however, I note that Regulations 103, amended to cover section 121 of the Revenue Act of 1942, provides, as to expenditures of executors or administrators, that expense incurred "in distributing the remaining assets to the beneficiaries or in conserving the assets for ultimate distribution to the parties entitled thereto are not deductible under this section." The same logic applies to distributions by trustees. I do not think that it was the intent of the statute to so broaden the meaning of the word "management" as to include expenses of distributing an estate. Not only is the statute providing for a deduction to be strictly construed, but also ordinary significance of the word must be assumed. I note that *In re Knight's Estate*, 208 N. Y. S. 822, involved trustees required by will to manage realty. It was held, "The word 'manage' implies the supervision, maintenance, and care of the premises, the making of necessary repairs, and the payment of taxes and water rents," and therefore that these duties, not being upon the trustees after the property had been leased for a long period, the trustees were not entitled to commissions upon the rents. We think the above quotation is a fair definition of "manage," with reference to the property of an estate and that the term does not connote such duties as distributing the property under a will or trust instrument. Indeed, the distribution and winding up of an estate or trust, through it may have to do with property included in the estate, is in a very real sense merely the performance of a legal function or duty under the will or trust instrument, not of the same character as the actual handling or dealing with the property itself. Distribution would be necessary, though only cash in hand was involved. Such performance of general administrative duty is, in my opinion, sufficiently distinct from the management or even the management, conservation, or maintenance of property in the usual and ordinary sense, as to require the conclusion that Congress did not intend to include it within the statutory expression. The statute does not provide for the expenses of management of an estate or trust, but "of property." To enlarge the

meaning of the word, as is done by the majority opinion, is, as I see it, judicial legislation; and if such effect is desirable, I think the matter should be left to Congress. In my opinion, section 121 does not, as the majority opinion holds, cover the situation.

HARRON, *J.*, agrees with this dissent.