CARL F. FAYEN AND ESTATE OF NANCY P. FAYEN, DECEASED, ROBERT W. T. PURCHAS, ADMINISTRATOR, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68428. Filed June 30, 1960.

*Arthur L. Nims III, Esq.,* and *Ross B. Abrash, Esq.,* for the petitioners.

*Arthur Pelikow, Esq.,* for the respondent.

MULRONEY, *Judge:* The respondent determined a deficiency in income tax against petitioners for the year 1953 in the amount of $1,366.10. Petitioner Carl F. Fayen was the trustee and life beneficiary of a trust and the only issue in the case is whether the amount of $4,664.37 which he paid into the principal of the trust, pursuant to a judicial settlement of a surcharge suit brought by remaindermen of the trust, is an allowable deduction under section 23(a)(1)(A) or section 23(a)(2), I.R.C. 1939.[1]

### FINDINGS OF FACT.

The stipulated facts are found accordingly. Carl F. Fayen (hereinafter sometimes referred to as petitioner) and Nancy P. Fayen were husband and wife during the year 1953 and they filed their joint Federal income tax return for said year with the district director of internal revenue at Richmond, Virginia. Nancy died and the only reason her estate and the administrator thereof, Robert W. T. Purchas, of Philadelphia, are involved in this proceeding is by virtue of the joint return which decedent filed with her husband.

Petitioner's father, Frederick George Herman Fayen, died a resident of New Jersey on July 7, 1930. His will appointed his wife, Minnie, and his two sons, George and petitioner, and a bank (later discharged) as executors of his will and trustees of certain trusts created by the will. The will placed the residuary estate in trust with income to be paid to Minnie for life and upon her death the trust property was to be divided into two equal portions, one to be held in trust for George and the other to be held in trust for peti-

---

[1] All section references are to the Internal Revenue Code of 1939.

tioner Carl, with the net income therefrom to be payable to George and Carl during their lives with remainder over to their children. There were also provisions for contingent remainders.

Minnie Fayen died December 29, 1943, and on March 6, 1945, the Orphan's Court of Essex County, New Jersey, confirmed division of the trust corpus into two equal parts as suggested by the surviving trustees. Each part was to be held in trust with George the life beneficiary of one trust and petitioner the life beneficiary of the other. The court also approved the resignations of Carl as cotrustee of the George S. Fayen Trust and George as cotrustee of the Carl F. Fayen Trust. This left petitioner Carl as sole trustee of a trust with assets of a market value of approximately $437,731 in 1945, of which he was the life beneficiary, with remainder over to his children.

The Fifth paragraph of the Frederick George Herman Fayen will provided, in part, as follows:

I empower my said Executors and Trustees to sell any or all of my real estate at their discretion, and to give good and sufficient deeds therefor, and to make leases of the same for such consideration and upon such terms as they shall deem to the interest of my estate; including the power to take, purchase money mortgages in part payment for any real estate sold by them.

I authorize my Executors and Trustees to continue any investment of my estate which I may leave at my death, and I direct that in making investments they shall not be limited to the class of securities prescribed by law for Trustees, but may invest in such good sound dividend paying stocks or interest bearing bonds, but preferably in First Mortgages on Montclair and environs real estate, as they may reasonable [sic] believe to be provident investments for my Estate, and I direct that they shall not be held responsible for loss arising without neglect or fault on their part.

On March 1, 1950, petitioner filed an intermediate accounting of his administration of the Carl F. Fayen Trust, with the Essex County Court, Probate Division, of New Jersey. The accounting covered the period from March 6, 1945, to November 30, 1949. Petitioner requested an allowance of $4,055.30 as commissions on the corpus of the trust fund, representing 1 per cent of $322,007.99, the amount of cash and securities taken over, plus $83,522.95 profits realized.

George H. Renton, as guardian ad litem for petitioner's sons, remaindermen of the Carl F. Fayen Trust, filed exceptions to the aforesaid accounting, and requested that the trustee (petitioner herein) be surcharged in the amount of $64,973.94 (later reduced to $54,306.16 by an amended exception) for losses and depreciation alleged to have been sustained by reason of securities sold at a loss and securities which had depreciated below their purchase price. As grounds for the exceptions taken it was alleged (a) that the trustee's primary concern in making investments had not been to preserve the value of the corpus of the trust estate; "rather he has

jeopardized its preservation in an endeavor to increase income or corpus"; (b) that he had speculated with the property in his charge; (c) that he had failed to diversify the investments, having invested less than 5 per cent in bonds and cash, 1½ per cent in preferred stocks, and 93½ per cent in common stocks; and (d) that the stocks enumerated were not of the character "prescribed by law for Trustees" or "good sound dividend paying stocks" which the will of Frederick George Herman Fayen had authorized the trustee to invest in. The guardian for the contingent remaindermen filed exceptions to a smaller number of investments. The trustees of the George S. Fayen Trust, the other trust created by subdivision II, paragraph Third, of Frederick Fayen's will, joined in these exceptions.

The issues in the accounting proceeding were settled during the hearing on the exceptions. The court approved the settlement and on January 8, 1952, entered a judgment in accordance therewith, directing Carl F. Fayen, as life beneficiary and trustee, from income to be received by him from the trust, to reimburse and pay into the principal of the trust the amount of $10,045, at least one-half of the said amount to be paid on or before December 31, 1952, and the remainder on or before December 31, 1953. Subject to the payment of such amount, the trustee's account covering the period from March 6, 1945, to November 30, 1949, was "in all things allowed as reported." The claim for trustee's commissions was waived as part of the settlement. Petitioner was credited with undistributed income of $716.25 which reduced the amount to be paid by him from $10,045 to $9,328.75. The court further directed that certain allowances be made by the trustee from the principal of the trust for guardian *ad litem* and attorneys' fees and costs, including a counsel fee and reimbursement for disbursements to the attorneys for the trustee, Carl F. Fayen. The last paragraph of the judgment states:

7. As part of the foregoing settlement, all of the excepted securities remaining in the hands of Carl F. Fayen, as trustee as aforesaid, shall be sold with all convenient speed.

In the year 1952 petitioner paid into the trust the sum of $4,664.37, and in 1953 he paid into the trust the balance due, or $4,664.37, thereby satisfying his liability under the consent judgment.

During the period 1945 through 1949, and during the year 1953, petitioner was a manufacturer's representative selling technical and industrial material to utility companies. In the process of representation petitioner traveled to various cities and was away from home approximately 15 to 20 weeks in 1953 and for even longer periods during the years 1945 to 1949. Petitioner also owned a farm of about 613 acres at Leesburg, Virginia, which he managed and on which he worked.

During the year 1953 petitioner devoted an average of 13 hours per week to the management of the Carl F. Fayen Trust. He worked on the trust at least some part of each day during the average week. He subscribed to and read, in connection with his activities as trustee, numerous financial and business magazines. During 1953 petitioner made three trips to New York during which he consulted with Jorgenson, a stockbroker and partner in Haydock, Schreiber and Company, concerning the trust investments. His time spent in managing the trust during the average week was as follows: 10 hours per week reading investment services and 3 hours per week writing letters and making telephone calls, traveling to consult a stockbroker, and consulting with a stockbroker. In 1953 petitioner paid $297 for subscriptions to investment services.

Petitioner bought and sold securities for the following number of trading days during the period set forth below:

| Year | Purchase | Sale | Total trading days |
|------|----------|------|--------------------|
| 1945 | 11 | 11 | 19 |
| 1946 | 12 | 8 | 17 |
| 1947 | 6 | 4 | 8 |
| 1948 | 7 | 5 | 11 |
| 1949 | 10 | 9 | 13 |
| | 46 | 37 | 68 |

In his administration of the trust during the period from March 6, 1945, to November 30, 1949, petitioner made 50 separate sales of securities at a profit and 14 separate sales of securities at a loss. During the same period petitioner, in his administration of the trust, made 83 purchases of securities and sold 2 parcels of real estate in which he personally owned a one-half interest. In addition, 3 mortgages owned by the trust were sold in 1945 and 2 mortgages owned by the trust were sold in 1946.

During the years indicated in the schedule below, petitioner received income from the following sources:

| Year | Income from Carl F. Fayen Trust | Commission as manufacturer's representative | Interest and dividend income |
|------|--------------------------------|--------------------------------------------|------------------------------|
| 1945 | $9,627.65 | $4,134.95 | |
| 1947 | 21,914.25 | 5,000.00 | |
| 1948 | 25,703.50 | 6,000.00 | $1,185.68 |
| 1949 | 28,934.24 | | 1,521.43 |
| 1953 | 24,968.59 | 5,534.66 | |

During the years 1945, 1947, 1948, and 1949 petitioner received no net income from his farming activities. During the year 1953 petitioner's farm was operated at a net loss of $13,250.55.

During the year 1953 petitioner was not engaged in the carrying on of a trade or business as trustee.

### OPINION.

The first question is whether the amount of $4,664.37 which petitioner paid in compromise of the surcharge suit is an allowable deduction under section 23(a)(1)(A). Since the cited statute allows as deductions "ordinary and necessary expenses paid * * * in carrying on any trade or business," the question is whether petitioner was, in fact, carrying on a trade or business while acting as trustee of the Carl F. Fayen Trust. We hold he was not.

It cannot be said petitioner was one who regularly engages in the business of serving as executor or trustee. This seems to be the only occasion for his acting as trustee. Petitioner was a manufacturer's representative selling technical equipment to various utilities and he was also engaged in managing and working on a cattle farm of approximately 613 acres that he owned. He testified he devoted "[o]n the average, about 13 hours a week" in the management of the trust and in the reading of various financial magazines and investment service publications. Upon the whole record we hold petitioner was not carrying on a trade or business while acting as trustee of the Carl F. Fayen Trust and his claim for deduction under section 23(a)(1)(A) is therefore denied. *Estate of Hyman Y. Josephs*, 12 T.C. 1069.

Petitioner's alternative argument is that the $4,664.37 petitioner paid in settlement of the surcharge suit is deductible under section 23(a)(2). This statute allows as deductions certain nonbusiness expenses in the following language:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

* * * * * *

(2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

Petitioner in his argument relies entirely upon the first part of the quoted statute, that the payment was an expense "for the production or collection of income." No argument is made that the payment was for expense "for the management, conservation, or maintenance of property held for the production of income."

In order to prevail petitioner must show the expenditure was for the production or collection of income. It is our view that on the record before us the expenditure to settle the surcharge suit is not an expense paid for the production or collection of income. The

case of *Estate of Edward W. Clark, III*, 2 T.C. 676, was based upon facts substantially similar to those in the instant case. There petitioner paid legal expenses in opposing a claim of mismanagement as trustee. In holding the expenditure for said legal expenses not deductible under the quoted statute, we said: "Obviously the expense was not paid or incurred 'for the production or collection of income.' No income was produced by the expenditure, nor was any collected. * * *"

The facts in *Commissioner* v. *Heide*, 165 F. 2d 699 (C.A. 2), reversing 8 T.C. 314, are much the same as those in the present case. There petitioner trustee waived his commissions on income and principal of the trusts and paid $3,000 in settlement of litigation in which the amount of his claimed commission was disputed and he was sought to be surcharged for negligence in handling the trust funds. He attempted to deduct the $3,000 under both the first and second parts of section 23(a)(2). In holding against petitioner's contention, the court said:

In the case at bar however, it is not enough that the expense be incurred in carrying on the trust; it must be necessary to "the production of income," or possibly to the "management, conservation, or maintenance" of the fund, and it seems to us impossible to regard it as such. True, restoration does become necessary, once the fund has been depleted; but obviously that cannot be the test, else it would cover deliberate invasions, which nobody maintains. The depletion itself must be necessary to the production of the income, or the management of the trust, and that it cannot be, unless we hold that, when one who engages to become a trustee and fails in his duty, his failure is "necessary" to the discharge of his office: surely, it takes hardihood to suppose that, when Congress chose that word, it meant to subsidize delinquent trustees in this way. Delinquent they are; for, although they undertake no more than reasonable care in the circumstances,[9] by hypothesis they have failed even in that. * * * [Footnote 9 omitted.]

A similar case reaching the same result as the *Heide* case is *Commissioner* v. *Josephs*, 168 F. 2d 233 (C.A. 8), reversing 8 T.C. 583. There petitioner and his coadministrator settled suits in which they were charged with mismanagement and petitioner sought to deduct the share he paid in connection with said settlement and litigation expenses under the quoted statute. In holding the deduction was not sanctioned by the statute, the court stated:

It is not enough that an expense be paid or incurred in connection with an income-producing activity in order to fall within the first class of deductions allowed by 23(a)(2); as plainly provided by the statute, the expense must be necessary to and paid or incurred for the production or collection of income, * * *

Petitioner cites *Bingham's Trust* v. *Commissioner*, 325 U.S. 365, affirming 2 T.C. 853, and *John Abbott*, 38 B.T.A. 1290. In the

latter case, decided before 23(a)(2) was added to section 23(a) by the Revenue Act of 1942, we held petitioner, who engaged in the business of acting as trustee, could deduct the amount he paid in settlement of a suit charging him with improper investment of trust funds. In the *Bingham* case, decided after the enactment of section 23(a)(2), it was held certain legal expenses paid by the trustees involving litigation in which the trustees unsuccessfully contested a deficiency claim based on taxable gain to the estate, and legal advice relating to tax and other problems arising from the expiration of the trust and the disposition of its assets, were all deductible under section 23(a)(2).

In the course of the opinion in the *Bingham* case it is stated:

Section 23(a)(2) is comparable and in pari materia with § 23(a)(1), authorizing the deduction of business or trade expenses. Such expenses need not relate directly to the production of income for the business. It is enough that the expense, if "ordinary and necessary," is directly connected with or proximately results from the conduct of the business. Kornhauser v. United States, supra, 276 U.S. 152, 153, 48 S. Ct. 219, 72 L. Ed. 505; Commissioner v. Heininger, supra, 320 U.S. 470, 471, 64 S. Ct. 252, 88 L. Ed. 171. The effect of § 23(a)(2) was to provide for a class of non-business deductions coextensive with the business deductions allowed by § 23(a)(1), except for the fact that, since they were not incurred in connection with a business, the section made it necessary that they be incurred for the production of income or in the management or conservation of property held for the production of income. McDonald v. Commissioner, supra, 323 U.S. 61, 62, 66, 65 S. Ct. 96, 97, 98, 100; and see H. Rep. No. 2333, 77th Cong., 2d Sess., pp. 46, 74–76; S. Rep. No. 1631, 77th Cong., 2d Sess., pp. 87–88.

An argument that is advanced is that the *Abbott* case held that an amount paid in settlement of a surcharge suit was deductible as an ordinary and necessary expense under section 23(a) by one who was engaged in the business of acting as trustee and the *Bingham* case, decided under the amendment or what is now section 23(a)(2), provides that an expenditure which would be deductible if the taxpayer were in the business of acting as trustee will now be deductible as a nonbusiness deduction if he is not in the business of acting as trustee.

This is the argument that we upheld in *Julius A. Heide*, 8 T.C. 314, and *Hyman Y. Josephs*, 8 T.C. 583. As stated earlier, both cases were reversed on appeal. The reversing opinions concluded that the *Bingham* case did not hold section 23(a)(2) provided for nonbusiness deductions which are coextensive with the business deductions allowed by section 23(a)(1)(A) when the business character of the expenditure is lacking. As pointed out in *Commissioner* v. *Josephs, supra*, in the *Bingham* case the court was dealing with the second class of deductions mentioned in section 23(a)(2) "for the

management, conservation, or maintenance of property held for the production of income." It is not argued in the instant case that the expenditure made is of this class.

The opinion in the *Bingham* case clearly points out that section 23(a)(2) provides for two classes of nonbusiness expenditures that would be deductible: Expenses for production or collection of income and expenses for management, conservation, or maintenance of property. Where the *Bingham* opinion states the effect of section 23(a)(2) was to provide for a class of nonbusiness deductions "coextensive" with the business deductions allowed by section 23(a)(1) it adds "except for the fact that, since they were not incurred in connection with a business, the section [23(a)(2)] made it necessary that they be incurred for the production of income" or for managerial services.

While the facts here are somewhat different from those in the *Heide* case and the *Josephs* case we agree with the conclusions reached by the Courts of Appeals of the Second and Eighth Circuits in those cases that an amount paid by a trustee or administrator in settlement of a surcharge suit is not deductible under 23(a) (2). Any holding to the contrary in our opinions in *Julius A. Heide, supra,* and *Hyman Y. Josephs, supra,* will no longer be followed.

We do not feel that the *Bingham* case is a mandate requiring a holding that an expenditure which might be deductible under section 23(a)(1)(A), if its business character is established, must be held deductible under section 23(a)(2) when the business character is not established, without first satisfying the conditions of section 23(a)(2) that it be an expenditure for the production or collection of income or an expenditure for the management, conservation, or maintenance of property, held for the production of income.

Petitioner mentions often in his brief that there was no judicial finding of his culpability. We cannot see how this fact adds anything to the argument when the question is whether the payment was for the collection or production of income. Petitioner admits the expenditure was for settlement of the surcharge suit as were the expenditures in the *Heide* and *Josephs* cases. Petitioner, if he seeks to have the deduction sanctioned under the first class of expenditures in section 23(a)(2), must first establish that the expenditure satisfies the condition of being for the collection or production of income. Whether the payment is made after a finding of mismanagement or in settlement of the surcharge suit is immaterial when the quest is whether it was for the production or collection of income.

We hold the $4,664.37 which petitioner paid in the year in ques-

tion in compromise of the surcharge suit is not deductible under section 23(a)(1)(A) or section 23(a)(2).

Reviewed by the Court.

*Decision will be entered for the respondent.*

Turner, *J.*, dissents.

———

Bruce, *J.*, dissenting: I agree with the majority of the Court that petitioner is not engaged in carrying on a trade or business as trustee and, accordingly, that his claim for deduction under section 23(a)(1)(A) should be denied.

In my opinion, however, a different conclusion is required with respect to petitioner's alternative contention that the expenditures involved are deductible as "ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income, under the provisions of section 23(a)(2) of the Internal Revenue Code of 1939." In this connection it is to be noted that the majority, in its opinion, has not considered the application of the second clause of section 23(a)(2) for the stated reason that "[n]o argument is made that the payment was for expense 'for the management, conservation, or maintenance of property held for the production of income.'" In my opinion this is error. Though not as pointed as might be desired, I think the arguments made by petitioner on brief were intended to apply to the provisions contained in the second clause as well as the first clause of section 23(a)(2). Moreover, the petitioner quoted both clauses of the section, and respondent evidently considered both clauses to be involved since, on brief, he has presented arguments relating to both clauses. In my opinion both clauses are involved and require consideration. Even if this were not so, however, I would still disagree with the conclusion of the majority under section 23(a)(2), because in my opinion the deduction should be allowed under either clause.

Pointing to the fact that as sole trustee and life-income beneficiary he was entitled not only to commissions as trustee, but to the entire net income of the trust during his lifetime, petitioner bases his contention *primarily* upon the first part of section 23(a)(2) relating to the deduction of expenses paid or incurred "for the production or collection of income." Further pointing to the fact that there was neither admission nor judicial determination of neglect or fraud on his part in the handling of the trust estate, and that he was not removed or required to resign from his position as trustee, petitioner says the settlement agreed upon not only brought an end to a family

dispute and saved the trust legal fees and court costs, but it enabled him to continue his duties as trustee, to save the trust commissions to which a court-appointed trustee would have been entitled, and through his continued management of the trust estate, to increase the income or yield to the estate and consequently to himself as income beneficiary.

Respondent argues that the expenditures are not deductible under the first part of section 23(a)(2) relating to the "production or collection of income" for the reason that "direct relationship of expense to income is lacking"; and that they are not deductible under the second part relating to "management, conservation, or maintenance of property held for the production of income" on the ground that they were not "ordinary and necessary," citing *Commissioner* v. *Heide*, 165 F. 2d 699 (C.A. 2, 1948), reversing 8 T.C. 314.

Prior to the enactment of section 23(a)(2), which was added to section 23(a) of the Internal Revenue Code of 1939 by the Revenue Act of 1942, a distinction had been made between fiduciaries whose activities as such were of sufficient scope to constitute a trade or business and those whose activities were casual or not sufficient to constitute a trade or business, with respect to the right to deduct payments resulting from charges of mismanagement of the trust estate. Thus, in *John Abbott*, 38 B.T.A. 1290, it was held that the taxpaper's activities as a trustee and executor were of sufficient scope to constitute the carrying on of a trade or business and that *payments growing out of alleged breaches of trust* in his conduct of such business *were deductible as ordinary and necessary business expenses*, within the meaning of section 23(a)(1) and under authority of the Supreme Court's decision in *Kornhauser* v. *United States*, 276 U.S. 145. In other cases, however, where the fiduciary's activities were only casual and not of sufficient scope to constitute the carrying on of a trade or business, deduction of such payments as a business expense or loss was disallowed. Cf. *Willoughby H. Stuart, Jr.*, 32 B.T.A. 574 (1935), affd. 84 F. 2d 368; *Steven H. Tallman*, 37 B.T.A. 1060 (1938).

In 1941, the Supreme Court, in *Higgins* v. *Commissioner*, 312 U.S. 212, disallowed the deduction of payments made in the management of a taxpayer's own investments in stocks and bonds on the ground that such an activity was not a "business." Similar rulings were made by the Supreme Court with respect to the management of investments by a trustee, *City Bank Farmers Trust Co.* v. *Helvering*, 313 U.S. 121, and by an executor, *United States* v. *Pyne*, 313 U.S. 127. These decisions led to the enactment of section 23(a)(2). *McDonald* v. *Commissioner*, 323 U.S. 57, 61; *Bowers* v. *Lumpkin*, 140 F. 2d 927, 928 (C.A. 4), certiorari denied 322 U.S. 755.

The purpose of the enactment of section 23(a)(2), as revealed by the congressional hearings and reports, was to remedy the inequitable treatment of loss in nonbusiness income under the then existing law.[1]

Subsequent to the enactment of section 23(a)(2), the Supreme Court, in *Bingham's Trust* v. *Commissioner*, 325 U.S. 365 (1945), reversing the Second Circuit Court of Appeals (145 F. 2d 568), and affirming a decision of this Court (2 T.C. 853), held that expenses incurred by trustees in unsuccessfully contesting an income tax deficiency asserted against them and in winding up the trust after its expiration, were deductible under section 23(a)(2) as expenses incurred or paid for the "management * * * of property held for the production of income." In so holding, the Supreme Court, at pages 373–374, said:

Section 23(a)(2) is comparable and in pari materia with § 23(a)(1), authorizing the deduction of business or trade expenses. Such expenses need not relate directly to the production of income for the business. It is enough that the expense, if "ordinary and necessary," is directly connected with or proximately results from the conduct of the business. Kornhauser v. United States, supra, 276 U.S. 152, 153, 48 S. Ct. 219, 72 L. Ed. 505; Commissioner v. Heininger, supra, 320 U.S. 470, 471, 64 S. Ct. 252, 88 L. Ed. 171. The effect of § 23(a)(2) was to provide for a class of non-business deductions coextensive with the business deductions allowed by § 23(a)(1), except for the fact that, since they were not incurred in connection with a business, the section made it necessary that they be incurred for the production of income or in the management or conservation of property held for the production of income. * * *

On the rationale of the Supreme Court's opinion in *Bingham's Trust* v. *Commissioner, supra,* and this Court's decision in *John Abbott, supra,* we held in both *Julius A. Heide,* 8 T.C. 314, revd. 165 F. 2d 699 (C.A. 2, 1948), and *Hyman Y. Josephs,* 8 T.C. 583, revd. 168 F. 2d 233 (C.A. 8, 1948), certiorari denied 335 U.S. 871, that surcharge payments made by a casual fiduciary, entitled to compensation for his services, in settlement of a suit charging misman-

---

[1] "Under existing law taxpayers are allowed to deduct expenses incurred in connection with a trade or business. Nontrade or nonbusiness income, however, is also subject to tax. It would therefore be equitable to provide for the deduction of expenses incurred in the production of such nontrade or nonbusiness income." Statement of Randolph Paul, Tax Adviser to the Secretary of the Treasury, Hearings before Committee on Ways and Means on Revenue Revision of 1942, 77th Cong., 2d Sess., 80, 88.

"The existing law allows taxpayers to deduct expenses incurred in connection with a trade or business. Due partly to the inadequacy of the statute and partly to court decisions, nontrade or nonbusiness expenses are not deductible, although nontrade or nonbusiness income is fully subject to tax. The bill corrects this inequity by allowing all of the ordinary and necessary expenses paid or incurred for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income. Thus, whether or not the expense is in connection with the taxpayer's trade or business, if it is expended in the pursuit of income or in connection with property held for the production of income, it is allowable." H. Rept. No. 2333, 77th Cong., 2d Sess., p. 46; 1942–2 C.B. 372, 410.

agement, were deductible under section 23(a)(2), as "ordinary and necessary expenses paid or incurred for the production or collection of income."

The Second Circuit Court of Appeals reversed the Tax Court in the *Heide* case, stating:

Bingham's Trust v. Commissioner, supra, did indeed hold that the two subdivisions of the section were "coextensive," save for the words added to the second; and we need not necessarily disagree with the Board's decision in Re Abbott, supra. Perhaps, when a man goes into the business of being a trustee, the occasional restoration of funds under his care, made necessary because of sporadic neglects, may be "necessary expenses" incurred in "carrying on" the business. That they are "incurred" in carrying it on is true enough; and, although it seems strange to think of them as "necessary," conceivably that may be permissible; such a business by hypothesis involves a number of separate trusts and some mistakes are probably inevitable. In the case at bar, however, it is not enough that the expense be incurred in carrying on the trust; it must be necessary to "the production of income," or possibly to the "management, conservation, or maintenance" of the fund, and it seems to us impossible to regard it as such. True, restoration does become necessary, once the fund has been depleted; but obviously that cannot be the test, else it would cover deliberate invasions, which nobody maintains. The depletion itself must be necessary to the production of the income, or the management of the trust, and that it cannot be, unless we hold that, when one who engages to become a trustee and fails in his duty, his failure is "necessary" to the discharge of his office: surely, it takes hardihood to suppose that, when Congress chose that word, it meant to subsidize delinquent trustees in this way. Delinquent they are; for, although they undertake no more than reasonable care in the circumstances, by hypothesis they have failed even in that. The purpose of the provision, which applies to all sorts of income, is apparent; without it a person receiving income would be charged with his gross receipts, and would not be allowed to set off the expenses without which those receipts would not come to hand at all. That was an injustice comparable with charging the "amount realized" upon a capital gain and refusing to credit the "basis." But the expenses so deducted should not be within the power of the taxpayer to avoid; they should result from conditions which stand in the path of his "producing" the income at all, they should not be such as he interposes himself, as little so, when his attention has flagged as when he has been deliberately unfaithful to his trust.

In the *Josephs* case, the Eighth Circuit Court of Appeals also reversed the decision of the Tax Court and remanded the case to the Tax Court for consideration under section 23(a)(1). Relying substantially upon the opinion of the Second Circuit Court of Appeals in the *Heide* case, the facts in which it considered indistinguishable from those in the case at bar, the court said:

It is impossible to believe that the expenses of respondent in this case were such as ordinarily and necessarily result from the activities of a fiduciary. Even if we may agree with the Tax Court that the expenses in question directly resulted from respondent's activities as administrator, we think it does not follow from that fact alone that the expenses were also paid or incurred for the production or collection of income, nor, in our opinion, does the deci-

sion in Trust of Bingham v. Commissioner, supra, compel that conclusion. Commissioner of Internal Revenue v. Heide, supra, reversing Heide v. Commissioner, 8 T.C. 314.

The Bingham case did not hold that 23(a)(2) provides for a claim of non-business deductions co-extensive with the business deductions allowed by 23(a)(1) "except [as we understand the Tax Court to say] that the taxpayer need not be engaged in a trade or business." On the contrary, the Bingham case holds that the two sections are co-extensive, except that to be allowable under the second the deductions must be either (1) ordinary and necessary expenses paid or incurred for the production or collection of income, or (2) ordinary and necessary expenses paid or incurred for the management, conservation, or maintenance of property held for the production of income. 325 U.S. at pages 373, 374, 65 S. Ct. 1232; Commissioner of Internal Revenue v. Heide, supra, 165 F. 2d at page 701.

In the Bingham case the court was dealing with the second or management class of deductions allowable under 23(a)(2), and it was in connection with this class of non-business expenses that the court said that it was sufficient for allowance that the expenses were directly connected with the conservation or maintenance of property held for the production of income; and that it was not required that the expense also be incurred or paid for the collection or production of income. 325 U.S. at pages 374, 375, 65 S. Ct. 1232. It is not enough that an expense be paid or incurred in connection with an income-producing activity in order to fall within the first class of deductions allowed by 23(a)(2); as plainly provided by the statute, the expense must be necessary to and paid or incurred for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. Commissioner of Internal Revenue v. Heide, supra; Davis v. Commissioner, supra, 151 F. 2d at page 443.

With due respect for the Second and the Eighth Circuit Courts of Appeals, I find it difficult to perceive any distinction intended by the Supreme Court in the *Bingham* case with respect to the interpretation of the terms "ordinary and necessary" as used in section 23(a)(1) and the interpretation of such terms as used in section 23(a)(2). In both instances, it seems to me, the test intended to be applied was one of "reasonable and proximate relation to" the business conducted, on the one hand, or "the production or collection of income" or "the management, conservation, or maintenance" of property held for such purpose, on the other hand. This is the test indicated in the Senate Report (S. Rept. No. 1631, 77th Cong., 2d Sess., pp. 87–88; 1942–2 C.B. 504, 570–1), referred to by the Supreme Court in the *Bingham* case, wherein it is stated:

Expenses, to be deductible under section 23(a)(2), must be ordinary and necessary, which rule presupposes that they must be reasonable in amount and must bear a reasonable and proximate relation to the production or collection of income, or to the management, conservation, or maintenance of property held for that purpose.

This is the same test subsequently adopted by the Treasury Department as section 19.23(a)–15 of Regulations 103, promulgated December 8, 1942 (1942–2 C.B. 97, 98), and carried forward as

section 29.23(a)-15 of Regulations 111 and as section 39.23(a)-15 of Regulations 118.

As was stated by the Supreme Court in the *Bingham* case:

Since there is no requirement that business expenses be for the production of income, there is no reason for that requirement in the case of like expenses of managing a trust, so long as they are in connection with the management of property which is held for the production of income. Section 23(a)(2) thus treats the trust as an entity for producing income comparable to a business enterprise, and like § 23(a)(1) permits deductions of management expenses of the trust, even though the particular expense was not an expense directly producing income.

It is recognized that in the *Bingham* case the Supreme Court was dealing with the second, or management class of deductions allowable under section 23(a)(2). In that case the trustees' activities were related to the problem of retaining income already possessed rather than the production or collection of income, and with questions concerning distribution and termination of the trust. What was there said, however, with respect to section 23(a)(2) being in *pari materia* with section 23(a)(1) and the proximate relationship of expenses to the management of property held for the production of income, is, in my opinion, applicable also to the first or "production of income" class of deductions allowable under section 23(a)(2).

As was suggested by the Second Circuit Court of Appeals in the *Heide* opinion, and pointed out by us in *Valentine E. Macy, Jr.*, 19 T.C. 409, affd. 215 F. 2d 875 (C.A. 2, 1954), it seems "strange" to conclude that expenditures made by an individual in the course of his activities as an executor or trustee may be regarded as "necessary" within the meaning of section 23(a)(1), when such activities constituted the carrying on of a trade or business, while the same or similar expenditures are not to be regarded as "necessary" within the meaning of section 23(a)(2), to the "production or collection of income," or to the "management, conservation, or maintenance of property held for the production of income."

On the rationale of the Supreme Court's opinion in *Bingham's Trust v. Commissioner*, and of this Court's opinions in *John Abbott*, *Julius A. Heide*, *Hyman Y. Josephs*, and *Valentine E. Macy, Jr.*, all *supra*, it is my opinion that the expenditures in question are deductible as ordinary and necessary expenses paid or incurred by petitioner during the year in issue in connection with his activities as trustee of the Carl F. Fayen Trust and have a reasonable and proximate relation to the "production or collection of income" *and* to the "management, conservation, or maintenance of property" held for that purpose, within the meaning of section 23(a)(2) of the Internal Revenue Code of 1939.

Petitioner was the sole life-income beneficiary, as well as the sole trustee of the Carl F. Fayen Trust. As such he was entitled not only to commissions as trustee but to the entire net income produced by the trust properties. In the latter respect this case differs factually from the *Heide* and *Josephs* cases where neither of the trustees had a personal financial interest in the trust involved other than the right to receive trustee's commissions. Note also that in *Estate of Edward W. Clark, III*, 2 T.C. 676, cited in the majority opinion, the trustee had no personal interest other than in commissions. In *Frederic A. Seidler*, 18 T.C. 256, 260, we pointed out that section 23(a)(2) "contemplates situations where the property is so held for the production of income for the taxpayer himself."

In view of his personal interest in the income of the trust, it is evident that petitioner's activities in connection with the sale and purchase of investment securities had a direct and proximate bearing upon the production of income not only for the trust but for himself. In fact, one of the exceptions to the trustee's accounting charged that the trustee's primary concern in making investments had not been to preserve the value of the corpus of the trust estate; "rather he had jeopardized its preservation in an endeavor to increase income or corpus."

In holding that the expenses involved in the *Heide* case were not necessary to "the production of income" or possibly to the "management, conservation, or maintenance" of the trust fund, the Second Circuit Court of Appeals said the expenses to be deducted "should not be within the power of the taxpayer to avoid"; that they should "result from conditions which stand in the path of his 'producing' the income at all"; and not such conditions "as he interposes himself." To hold that an expenditure may not be regarded as "necessary," unless it was an expenditure not "within the power of the taxpayer to avoid," that it must have resulted from conditions which stood "in the path of his 'producing' the income at all," and are not such conditions "as he interposes himself," could result in an undue restriction not only on the deductibility of business expenses under section 23(a)(1), as stated in *Valentine E. Macy, Jr., supra*, but on the deductibility of nonbusiness expenses under section 23(a)(2), contrary to the pronouncements of the Supreme Court in *Bingham's Trust* v. *Commissioner, supra*, and numerous other decided cases, including those mentioned in the *Macy* opinion and *Kornhauser* v. *United States, supra*, and *Commissioner* v. *Heininger*, 320 U.S. 467, cited in the *Bingham* case.

Respondent's contention that the payments made by petitioner in settlement of the charges contained in the exceptions taken to the trustee's accounting are not "ordinary and necessary" but "extraor-

dinary" expenses which arose out of petitioner's neglect or fault, is contrary to the teaching of the cases mentioned above, only one of which need here be mentioned. In *Commissioner* v. *Heininger*, *supra*, the taxpayer, a mail-order dentist, incurred legal costs and fees in connection with his unsuccessful defense of a mail-fraud order issued by the Postmaster General, which threatened the destruction of his business. The Supreme Court upheld the deduction of such expenses, stating, *inter alia*:

> It is plain that respondent's legal expenses were both "ordinary and necessary" if those words be given their commonly accepted meaning. * * * Surely the expenses were no less ordinary or necessary than expenses resulting from the defense of a damage suit based on malpractice, or fraud, or *breach of fiduciary duty*. Yet in these latter cases legal expenses have been held deductible without regard to the success of the defense. [Emphasis supplied.]

See *Isaac P. Keeler*, 23 B.T.A. 467, and *Helvering* v. *Hampton*, 79 F. 2d 358, cited by the Supreme Court in footnote 6.

As the above authorities indicate, it is immaterial whether petitioner was in fact negligent or at fault in his handling of the trust properties, there being no suggestion that allowance of the deductions herein would frustrate sharply defined national or State policies. Moreover, there is no basis in the record for assuming, as respondent would have us do, that petitioner was in fact negligent or delinquent in his fiduciary duties. The mere compromise of a surcharge claim does not, of itself, establish as true the allegations of fact on which the claim is based. *William L. Butler*, 17 T.C. 675, 680. There is no evidence such charges were admitted or judicially determined in the State court proceedings and proof by the petitioner that he was not in fact delinquent in his fiduciary duties is not essential to the allowability of the claimed deductions here. *Commissioner* v. *Macy*, 215 F. 2d 875 (C.A. 2, 1954), affirming 19 T.C. 409. Assuming, however, for the purposes of argument, that petitioner had the burden of proving that he was not in fact delinquent in his fiduciary duties, considering all the facts and circumstances shown by the record, it is reasonable to conclude that petitioner was not in fact delinquent in his fiduciary duties. The exceptions taken to the accounting report are more indicative of errors of judgment than of neglect or fault—errors not uncommon in the investment field. Moreover, petitioner testified, and I believe credibly so, that he entered into the settlement in order to save the estate additional litigation expenses, to avoid the continuation of a family wrangle, to protect the interests of his sons, the remaindermen, and to enable him to get back to managing the trust in accordance with the economic conditions which had developed. In this connection it is to be noted petitioner was not removed or required

to resign from his position as trustee, as was the case in both *Heide* and *Josephs*.

Summarizing: Petitioner was the sole life-income beneficiary, as well as the sole trustee of the Carl F. Fayen Trust. He managed, conserved, and maintained the trust property for the purpose of producing income for the trust as well as for himself in both his status as trustee and as income beneficiary. Conserving the trust property was to his personal advantage as beneficiary. By settling rather than litigating the surcharge claims petitioner avoided additional attorneys' fees and other costs which might have been charged against the trust. It might here be noted that the will of petitioner's father under which the trusts were originally created contains an exculpation clause directing that the trustees "shall not be held responsible for loss arising without neglect or fault on their part." Thus, absent neglect or fault on the part of the petitioner any additional litigation expenses would properly have been chargeable to and paid out of the trust estate as was directed by the Probate Court with respect to such expenses incurred prior to the settlement. Likewise, by holding and retaining his position as trustee petitioner saved the difference between his expenses as trustee and the amount to which a compensated trustee would have been entitled as commissions under New Jersey law. N.J. Stat. Ann. sec. 3A:10-2. The surcharge expenses clearly arose directly and proximately out of petitioner's management of the trust property which was held for the production of income.

In my opinion, both the law and the facts require the conclusion that the expenditures involved are "ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income," within the meaning of section 23(a)(2), and are accordingly, deductible.

---

FORRESTER, *J.*, dissenting: I feel that the necessary activities of Carl F. Fayen were so extensive as to make the expenditures in issue deductible under section 23(a)(1)(A). With this reservation, I agree with the dissenting opinion of Judge Bruce.